Argued and submitted November 15, 2013, reversed and remanded
September 30, 2015, petition for review denied February 4, 2016 (358 Or 551)

Randy A. SWANK,
*Plaintiff-Appellant,*

*v.*

TEREX UTILITIES, INC.,
an Oregon corporation,
*Defendant,*

*and*

MANITEX, INC.,
a foreign corporation,
*Defendant-Respondent.*

Linn County Circuit Court
101027; A152465

360 P3d 586

W. Eugene Hallman argued the cause and filed the briefs for appellant.

Janis C. Puracal argued the cause for respondent. On the brief were Ronald J. Clark, Stephen F. Deatherage, and Bullivant Houser Bailey PC.

Before Armstrong, Presiding Judge, and Nakamoto, Judge, and Tookey, Judge.

ARMSTRONG, P. J.

## ARMSTRONG, P. J.

Plaintiff was injured while working for his employer, ES&A Sign and Awning Company (ES&A), when the boom of a crane, along with the basket in which plaintiff was riding, fell due to the failure of the crane's rotator-bearing assembly. Plaintiff brought an action against defendant Manitex, Inc., a Texas corporation, claiming that Manitex was negligent in several respects in conducting a "field campaign" to address a defect in the crane's rotator-bearing assembly, which resulted in ES&A failing to properly repair the defect.[1] After raising the defense of lack of personal jurisdiction under Oregon's long-arm rule, ORCP 4, Manitex brought a motion for summary judgment on that issue, which the trial court granted. Because we conclude that the trial court has personal jurisdiction over Manitex under ORCP 4 D based on the field campaign that Manitex conducted in the forums in which the affected cranes were located, including in Oregon, we reverse and remand.

In determining whether an Oregon court has long-arm jurisdiction over a nonresident defendant, we look to ORCP 4.[2] *State ex rel Circus Circus Reno, Inc. v. Pope*, 317 Or 151, 153, 854 P2d 461 (1993). Personal jurisdiction may

---

[1] Plaintiff also brought his complaint against Terex Utilities, Inc., which was later dismissed from the action. As a result, Terex is not a party on appeal.

[2] ORCP 4 provides, in part:

"A court of this state having jurisdiction of the subject matter has jurisdiction over a party served in an action pursuant to Rule 7 under any of the following circumstances:

"A Local presence or status. In any action, whether arising within or without this state, against a defendant who when the action is commenced:
"* * * * *

"A(4) Is engaged in substantial and not isolated activities within this state, whether such activities are wholly interstate, intrastate, or otherwise[.]
"* * * * *

"C Local act or omission. In any action claiming injury to person or property within or without this state arising out of an act or omission within this state by the defendant.

"D Local injury; foreign act. In any action claiming injury to person or property within this state arising out of an act or omission outside this state by the defendant, provided in addition that at the time of the injury, either:

"D(1) Solicitation or service activities were carried on within this state by or on behalf of the defendant; or

be "general" under ORCP 4 A, "specific" under one of the provisions in ORCP 4 B though K, or "specific" under the "catchall" provision of ORCP 4 L. *O'Neil v. Martin*, 258 Or App 819, 829, 312 P3d 538 (2013), *rev den*, 355 Or 381 (2014) (citing *Circus Circus*, 317 Or at 154-56). Plaintiff had the burden of pleading and proving facts sufficient to establish personal jurisdiction over Manitex. *See, e.g., Nike USA, Inc. v. Pro Sports Wear, Inc.*, 208 Or App 531, 533, 145 P3d 321 (2006). The record on Manitex's motion for summary judgment includes the parties' pleadings and the evidence that the parties submitted to the trial court. In reviewing a trial court's dismissal of a complaint against a defendant for lack of personal jurisdiction, "we construe the pleadings and affidavits liberally in favor of jurisdiction." *Id.* at 536. Once the historical jurisdictional facts are established, or when, as here, the historical facts are undisputed, we review for legal error the trial court's determination whether those facts establish personal jurisdiction over the defendant. *Id.* The undisputed jurisdictional facts in the record in this case are as follows.

Manitex is a Texas corporation with its principal place of business in Texas. Manitex has never had an office in Oregon, nor had it owned any property in Oregon before plaintiff sustained his injury in May 2008. Manitex has stated in promotional materials that its "Manitex subsidiary manufactures and markets a comprehensive line of boom trucks and sign cranes through a national and international dealership network." Since March 2011, Coast Crane, which is located in Oregon, has been Manitex's dealer for Oregon. Before that time, Manitex did not have a dealer for Oregon, and an Oregon customer would have been directed to Manitex's dealers in Washington or California. Manitex maintains a website that includes a "locate a dealer" page

---

"D(2) Products, materials, or things distributed, processed, serviced, or manufactured by the defendant were used or consumed within this state in the ordinary course of trade.

"* * * * *

"L Other actions. Notwithstanding a failure to satisfy the requirement of sections B through K of this rule, in any action where prosecution of the action against a defendant in this state is not inconsistent with the Constitution of this state or the Constitution of the United States."

that provides contact information for dealers servicing a state, including Oregon, or for the nearest dealer if there is not a designated dealer for the state.

In 2008, Manitex had three invoices and one credit memorandum related to Oregon, with total sales of $6,248. In 2009, Manitex had two Oregon transactions totaling $918. In 2010, there were 51 transactions totaling $32,911. One of Manitex's 2010 sales was to ES&A and was directly shipped to ES&A. Manitex's warranty log indicated that, as of June 2011, 14 of its cranes were owned and located in Oregon; however, the owners of those cranes had not purchased the cranes directly from Manitex. Terex Utilities, Inc.,[3] a company that performed maintenance and repair work on ES&A's crane, had in the past ordered parts from Manitex, either through Manitex's Oregon dealer or directly from Manitex.

The crane at issue in this case—a Phoenix SkyHoist SX57—was manufactured by Phoenix Corporation. ES&A had purchased the crane from a company named SignArt. SignArt is located in Michigan, but it had a branch office in Portland, Oregon, where it used the crane. When SignArt decided to close its Portland office, it sold its Oregon crane to ES&A.

In 2003, Manitex Skycrane, LLC, a subsidiary of Manitex, purchased certain assets of Phoenix, including the SX57 crane line. After purchasing those assets, Manitex learned of incidents in which SX57 cranes were "coming undecked"—that is, the joint of the pedestal to the turret would come apart and cause an uncontrolled fall. Manitex then undertook a "field campaign" to identify the location of the affected cranes and to require current owners to make "mandatory" inspections of the rotation bolts.

First, Manitex used data from Phoenix to create an initial registry of owners of the SX57 cranes potentially affected by the identified defect. Then, in November 2003, Manitex sent out a first advisory bulletin directed to "[a]ll SX57 Owners with units built before January 1999."

---

[3] As explained above, 274 Or App 49 n 1, plaintiff included Terex as a defendant in the action but later dismissed it from the case.

The bulletin told owners that they "must" inspect the rotation bolts on their crane as instructed in the attached "SX57 Rotation Bearing Fastener Inspection Document," return the attached "Rotation Bolt Inspection Report" to Manitex, and, if any bolts were broken or missing, take the crane out of service and contact Manitex. The bulletin further instructed, "If you have sold this unit you must complete Section II and forward owner information on the 'Rotation Bolt Inspection Report.'" Manitex's former general manager and president, Rolston, testified that the purpose of the report was to obtain owner information if the crane had been sold and to instruct owners to replace missing bolts, if any. If the returned inspection report showed no issues, then Manitex did not follow up because the original bulletin advised regular inspection.

About a year and one half later, in March 2005, Manitex sent a second advisory bulletin to the same registry of owners, after it had designed a retrofit of the pedestal base for the SX57 crane. That bulletin was also addressed to "ALL SX57 OWNERS WITH UNITS BUILT BEFORE JANUARY 1999" and advised, in part, as follows:

> "Manitex SkyCrane recently became aware of problems with the rotation bolts on some Phoenix SkyHoist SX57 units. In November of 2003, Manitex SkyCrane released Advisory Bulletin #357 to all known purchasers of Phoenix SkyHoist SX57 units before January 1999. The Advisory was intended to locate and identify units then in service that may have loose or missing rotation bearing bolts. * * *

> *"Manitex SkyCrane is doing everything it can to locate all affected units.* To that end, we have enclosed a second copy of the November 2003 Advisory #357, the Rotation Bearing Fastener Inspection Procedure and the Rotation Bolt Inspection Form. *This gives everyone an additional opportunity to inspect and/or report the condition and current location of their units.*

> "* * * * *

> "Manitex SkyCrane has developed a series of Bearing Replacement Kits and Pedestal Retrofit Kits. The kit part numbers will vary depending on the specific design of the unit. **In order to identify the appropriate kits for your unit, please submit the attached worksheet**

**with all the necessary information requested**. If you have already submitted the Rotation Bolt Inspection Form from Advisory #357, you only need to complete the Pedestal Data section of the worksheet.

"The kits will be priced **at cost** and can be purchased directly from Manitex SkyCrane or any Manitex SkyCrane dealer."

(Underscoring and boldface in original; emphases added.) The bulletin also included a list of several contact people at Manitex, along with their phone numbers and email addresses. Rolston testified that, on receipt of the worksheet, if the crane came within a category that required a retrofit, then Manitex would advise the owner to replace the pedestal as set forth in the bulletin.

In April 2005, SignArt, the prior owner of ES&A's SX57 crane, faxed both of the Manitex bulletins and their attachments to ES&A. In response, also in April 2005, Hauer from ES&A sent an email to Wells, who was listed as a contact person at Manitex in both bulletins, advising him that the subject crane had been at Terex in 2004 for "turret bearing replacement and rotator adjustments" and asking him whether Manitex needed additional information with regard to the field campaign. In May 2005, Hauer also faxed to Wells the Rotation Bolt Inspection Report for the crane, as requested by Manitex in both the first and second advisory bulletins, advising Manitex that ES&A was the current owner of the crane and that no bolts were missing. Neither Wells nor anyone else from Manitex contacted ES&A in response to Hauer's email or inspection report. As a result, ES&A was not advised by Manitex whether a retrofit was necessary or, if it was, which model of retrofit kit to purchase and install.

On May 29, 2008, plaintiff was injured when ES&A's SX57 crane boom fell while plaintiff was in the basket. After the accident, Manitex began communicating with ES&A and requested more information about the accident. Manitex also emailed to ES&A "the original bulletin and form that was sent out in March of 2005" and requested that ES&A fill it out and return it. Manitex also sought to get in touch with Terex to provide support to get the crane

back in service. Terex communicated directly with Manitex to obtain the bearing and pedestal retrofit kit for ES&A, which Manitex shipped directly to Terex. Terex's manager of repair work also spoke directly with Manitex about the retrofit after the kit arrived because he noticed that the retrofit kit had substantially different parts from the old parts on the crane. Manitex told Terex's manager that the new parts were needed because the old parts were not "strong enough." Terex then installed the retrofit kit on ES&A's crane.

In April 2010, plaintiff filed negligence claims against both Terex and Manitex. Specifically, plaintiff alleged that Manitex was negligent as follows:

"(a) Defendant Manitex failed to respond to Hauer's email as to whether necessary work had been completed;

"(b) Defendant Manitex failed to inform Defendant Terex about the need to replace the rotator bearing assembly;

"(c) Defendant Manitex failed to respond to Hauer's email by contacting Defendant Terex to determine whether or not necessary work had been completed;

"(d) Defendant Manitex failed to warn ES&A or Hauer that the crane remained in a dangerously defective condition;

"(e) Defendant Manitex failed to design a 'Field Campaign' program with the necessary follow-up to respond to customer questions, concerns, and to track the repair and replacement of [the] rotator bearing assembly; and

"(f) Defendant Manitex failed to provide the information in its 'Field Campaign' necessary for its customers, and in particular ES&A, to understand and secure the necessary replacement of the rotator bearing assembly."

In its answer to plaintiff's complaint, Manitex asserted several affirmative defenses, including that the trial court lacked personal jurisdiction over it. In response to that affirmative defense, plaintiff alleged that the court had jurisdiction over Manitex under ORCP 4 C, D, and E.

Before trial, Manitex brought a motion for summary judgment seeking dismissal of plaintiff's complaint against

it on the ground, among others, that the trial court lacked personal jurisdiction over it. In response, plaintiff asserted that the trial court had general jurisdiction over Manitex under ORCP 4 A(4) and specific jurisdiction over Manitex under both ORCP 4 C and D. After reviewing the jurisdictional facts with respect to each of those provisions, the trial court concluded that it lacked both general and specific jurisdiction over Manitex. As relevant on appeal, the trial court concluded that it lacked general jurisdiction because, "[a]lthough the evidence shows intermittent and unsolicited sales of items to Oregon customers in 2009 and 2010, I find that these activities were not substantial, and do not rise to the level necessary to confer jurisdiction pursuant to [ORCP 4 A(4)]." With respect to specific jurisdiction under ORCP 4 D, the trial court concluded that Manitex had not engaged in an "act or omission" under that provision and that, "at the time of the injury, Manitex was engaged in no solicitation or service activities in Oregon and did virtually no business in Oregon." The trial court then entered a general judgment for Manitex, which plaintiff appeals.

On appeal, plaintiff assigns error to the trial court's conclusion that it had neither general jurisdiction, ORCP 4 A(4), nor specific jurisdiction, ORCP 4 D, over Manitex. Plaintiff also asserts on appeal that the trial court had specific jurisdiction over Manitex under the "catchall" provision in ORCP 4 L. We reject without discussion plaintiff's contention that the trial court had general jurisdiction over Manitex under ORCP 4 A(4) because we agree with the trial court that plaintiff did not establish that Manitex had engaged in "substantial and not isolated activities within this state," *id.* Thus, plaintiff's claims against Manitex must be based on specific jurisdiction, which we conclude that plaintiff established under ORCP 4 D. However, because the parties' arguments overlap with respect to ORCP 4 D and L, we first address the difference between the two provisions.

In their arguments, plaintiff and Manitex disagree as to whether certain case law is applicable to our analysis under ORCP 4 D. Specifically, Manitex asserts that plaintiff cannot rely on certain cases to support his arguments under ORCP 4 D because, according to Manitex, those cases were decided under ORCP 4 L. As explained below, we take this

opportunity to reject Manitex's rigid view of the application of case law on personal jurisdiction.

In interpreting ORCP 4 D and L, we look to their text and context, as well as to the intention of the Council on Court Procedures in adopting them when, as here, the rules were adopted without change by the legislature. *See Waddill v. Anchor Hocking, Inc.*, 330 Or 376, 381, 382 n 2, 8 P3d 200 (2000), *adh'd to on recons*, 331 Or 595, 18 P3d 1096 (2001) ("[U]nless the legislature amended the rule at issue in a particular case in a manner that affects the issues in that case, the Council's intent governs the interpretation of the rule."); *see also A. G. v. Guitron*, 351 Or 465, 480 n 13, 268 P3d 589 (2011) ("We use [the council's] legislative history as we would use comparable history from the Oregon Legislature."). Both ORCP 4 D and L were promulgated by the council during its inaugural 1977-79 biennium and have not been subsequently amended by the council or the legislature. As noted above, those rules provide that a court of this state has personal jurisdiction over a party:

> "D  *** In any action claiming injury to person or property within this state arising out of an act or omission outside this state by the defendant, provided in addition that at the time of the injury, either:
>
> "D(1)  Solicitation or service activities were carried on within this state by or on behalf of the defendant; or
>
> "D(2)  Products, materials, or things distributed, processed, serviced, or manufactured by the defendant were used or consumed within this state in the ordinary course of trade.
>
> "* * * * *
>
> "L  *** Notwithstanding a failure to satisfy the requirement of sections B through K of this rule, in any action where prosecution of the action against a defendant in this state is not inconsistent with the Constitution of this state or the Constitution of the United States."

ORCP 4 D thus specifies when a court has personal jurisdiction over a nonresident defendant based on an in-state injury arising from an out-of-state act or omission. ORCP 4 L, known as the "catchall" provision, covers any other circumstances not specified in the specific personal jurisdiction

provisions of ORCP 4 B through K that would constitutionally permit an Oregon court to exercise jurisdiction over a nonresident defendant.

In the final draft of ORCP 4, the council provided extended comments to the rule. As specific to ORCP 4 D and L, the council commented:

> "4 C. and D.   These sections apply in all tort and contractual claims for injury when either the acts giving rise to the injury occurred in Oregon or the injury took place in Oregon. The limits of the application of section 4 D. are the generally accepted limit of due process in this area. *See Hanson v. Denckla*, 357 US 235[, 78 S Ct 1228, 2 L Ed 2d 1283] (1958). ***

> "*****

> "4 L.   This section is designed to extend jurisdiction in any case not covered in the specific sections, within the limits of due process."

Comment to Rule 4, Final Rule, Oregon Rules of Civil Procedure, Council on Court Procedures, Dec 2, 1978, at 12-13 (Comment to Rule 4).

As clarified in the comment, the council intended ORCP 4 D to extend jurisdiction to the limits of federal due process with respect to those actions that arise out of an act or omission occurring out of state that causes an in-state injury. *See Hanson*, 357 US at 251 (explaining that due process imposes limits on the power of states to require a defendant to appear before its courts, and that "a defendant may not be called upon to do so unless he has had the 'minimal contacts' with that State that are a prerequisite to its exercise of power over him"). The parties' arguments about which cases are "4 D" cases or "4 L" cases are misdirected because, regardless whether a case is a "4 D case" or a "4 L case," the limit on an Oregon court's exercise of personal jurisdiction over a defendant is the same—federal due process. If a court opinion (whether state or federal) is useful to our analysis in determining where those due process limits lie in a case involving circumstances that fall within ORCP 4 D, then a court, or a party, is free to draw on that opinion for guidance, even if it was decided without reference to ORCP 4 D.

We turn to the circumstances of this case. The trial court concluded that it did not have personal jurisdiction under ORCP 4 D both because Manitex did not commit an "act or omission" and because Manitex did not have contacts with Oregon that came within the ambit of either ORCP 4 D(1) or D(2). The trial court based those two conclusions on the following reasoning:

> "Manitex issued notices, which were ultimately received by [ES&A], regarding potential defects and the need for remedial action. I find that Manitex had no legal obligation to provide these notices, and that its alleged failure to respond to an inquiry from [ES&A] regarding the second notice was therefore neither an 'act' nor an 'omission.' In this regard, it is important to note that the inquiry did not state that [ES&A] would assume the 2004 repairs were sufficient and that a further retrofit was not necessary unless Manitex informed them otherwise. Rather, the inquiry simply asked whether the 2004 repair solved the problem. I find further that at the time of the injury, Manitex was engaged in no solicitation or service activities in Oregon and did virtually no business in Oregon."

As to the first of the trial court's conclusions—that there was no "act or omission" by Manitex covered by ORCP 4 D—we conclude that the trial court erred. In determining whether a court has personal jurisdiction over a defendant, we are not concerned with whether a plaintiff has a meritorious claim; we are concerned only with whether the circumstances of the claim meet the requirements of ORCP 4 D. *See Marvel v. Pennington GMC, Inc.*, 98 Or App 612, 616, 780 P2d 760 (1989) ("In deciding whether Oregon courts have personal jurisdiction over a nonresident defendant, our inquiry is limited to the specific circumstances relating to the alleged injury. We are not concerned with the merits of plaintiff's claims but merely with whether the circumstances involved in this case meet the requirements of ORCP 4 C or 4 D."). ORCP 4 D applies "[i]n any action claiming injury to person or property within this state arising out of an act or omission outside this state by the defendant." In his complaint, which we liberally construe in favor of jurisdiction, *see Nike*, 208 Or App at 536, plaintiff alleged that Manitex, while located outside Oregon, initiated a retrofit campaign directed at SX57 crane owners and failed to take

certain necessary actions in carrying out that campaign, which acts and omissions caused plaintiff injury in Oregon when the unretrofitted crane failed.

Manitex does not dispute that it initiated a retrofit campaign or that it took, or failed to take, the actions that plaintiff alleges were negligent. Instead, Manitex supports the trial court's ruling by recasting plaintiff's allegations, arguing that plaintiff's claims solely "arise out of an allegedly defective rotator bearing assembly in a crane that Manitex did not manufacture, sell, or service." That, however, is not the basis of plaintiff's claim against Manitex. The basis of plaintiff's claim is that Manitex negligently carried out a retrofit campaign for the SX57 crane, which caused plaintiff's injuries. Again, we are not concerned at this stage with whether plaintiff's claim has any merit; we are concerned only with whether the circumstances of the claim fall within ORCP 4 D. Here they do because plaintiff's allegations make out a claim for in-state injury to his person arising from an out-of-state act or omission by Manitex.

We next consider whether Manitex engaged in additional conduct at the time of plaintiff's injury, as provided in either ORCP 4 D(1) or D(2), such that the trial court could exercise personal jurisdiction over Manitex on plaintiff's claim. Those subsections provide that, "at the time of the injury," either "[s]olicitation or service activities were carried on within this state by or on behalf of the defendant," or "[p]roducts, materials, or things distributed, processed, serviced, or manufactured by the defendant were used or consumed within this state in the ordinary course of trade." However, before we can determine if Manitex engaged in conduct of that kind, we must address whether, to satisfy ORCP 4 D, a plaintiff's claim must "arise out of or relate to" the defendant's additional conduct listed in D(1) or D(2), or whether that conduct can be unrelated to the claim of injury. We must answer that question first, because it controls the facts that we may consider in analyzing whether plaintiff established that the trial court could exercise jurisdiction over Manitex under ORCP 4 D.

Plaintiff argues that the activities used to satisfy the additional conduct requirement under ORCP 4 D can be

unrelated to his claim, relying on a statement from *Marvel*. In that case, we briefly compared the text of ORCP 4 C and ORCP 4 D, and we said of ORCP 4 D that,

> "[o]n the other hand, ORCP 4 D requires that the claimed injury occur in Oregon and presupposes that an act or omission causing the injury occurred outside the state. Aside from the injury, the rule requires additional contact with Oregon, *although not necessarily related to the claim*, as defined in ORCP 4 D(1) and (2)."

*Marvel*, 98 Or App at 616 (emphasis added). However, in making that observation, we did not analyze the text of ORCP 4 D(1) or D(2) or apply those provisions to the case, because we concluded that there was not a claimed in-state injury to which ORCP 4 D could apply. *Id.* Plaintiff has not cited, nor are we aware of, any Oregon appellate case that has concluded that a court could exercise jurisdiction over a defendant under ORCP 4 D based on additional conduct that is unrelated to the claim. Manitex, for its part, argues that a plaintiff's claim must arise out of or relate to the defendant's in-forum contacts to satisfy due process, whether a plaintiff relies on ORCP 4 D or ORCP 4 L to establish jurisdiction.

It is well established in Oregon that, under ORCP 4 L, a plaintiff's claim must arise out of or relate to at least one of the defendant's in-forum contacts to establish personal jurisdiction. *See Robinson v. Harley-Davidson Motor Co.*, 354 Or 572, 594, 316 P3d 287 (2013) (adopting a combined "but for" and "reasonably foreseeable" standard for the "arise out of and relate to" requirement for personal jurisdiction under ORCP 4 L). The question here is whether a similar relatedness requirement also applies to ORCP 4 D, such that a plaintiff's claim must arise out of or relate to at least one of the defendant's in-forum contacts falling within ORCP 4 D(1) or D(2). We conclude that ORCP 4 D does have such a relatedness requirement.

Before the adoption of ORCP 4 D, the United States Supreme Court case law distinguished between general jurisdiction, which did not require the cause of action to "arise out of or relate to" the nonresident defendant's in-forum activities, and specific jurisdiction, which did. *See*

*Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 US 408, 414-15, 104 S Ct 1868, 80 L Ed 2d 404 (1984) (explaining difference between general and specific jurisdiction, citing *Shaffer v. Heitner*, 433 US 186, 204, 97 S Ct 2569, 53 L Ed 2d 683 (1977), and *Perkins v. Benguet Consolidated Mining Co.*, 342 US 437, 72 S Ct 413, 96 L Ed 485 (1952)). At that time, the cases focused on a "'relationship among the defendant, the forum, and the litigation'" to determine whether an exercise of specific jurisdiction comported with due process. *Id.* at 414 (quoting *Shaffer*, 433 US at 204). The council recognized that constitutional limit in its comment to ORCP 4, stating that "Sections 4 C. through L. all require that the cause of action arise out of a described contact with this state." Comment to Rule 4 at 12; *see also Circus Circus*, 317 Or at 155 n 1 (The court notes that ORCP 4 C through K provide for "specific" jurisdiction, which is "jurisdiction based on 'a relationship between the state and the subject matter of the particular litigation. Jurisdiction [under those subsections] exists only if the action "arises out of" defined activities by the defendant.'" (Quoting Merrill, Jurisdiction and Summons in Oregon 2 (1986) (brackets in *Circus Circus*).)).

In addition to that recognition of the due process limit on specific jurisdiction in ORCP 4 D, in general with respect to ORCP 4, the council also recognized

> "that ultimately the permissible exercise of personal jurisdiction will be defined by court action interpreting constitutional limits. *Where such limits presently are not well defined, persons relying upon bases of jurisdiction described specifically in the rule must always recognize the possibility of future court action defining the limits of personal jurisdiction.* * * * The intent of the Council was to extend personal jurisdiction to the extent permitted by the federal or state constitutions and not foreclose an attempt to exercise personal jurisdiction merely because no rule or procedure of the state authorized such jurisdiction."

Comment to Rule 4 at 12 (emphasis added). Since the adoption of ORCP 4 D, the United States Supreme Court has continued to further delineate the outer limits of due process for a state court's exercise of specific jurisdiction over a nonresident defendant. Those cases make explicit that, under those

circumstances, an action must "arise out of or relate to" the nonresident defendant's "activities in the forum State" to comport with due process. *Helicopteros*, 466 US at 414; *Robinson*, 354 Or at 579-80 (discussing the Court's various articulations of the "arise out of and relate to" requirement for specific personal jurisdiction); *see also Walden v. Fiore*, ___ US ___, 134 S Ct 1115, 1121, 188 L Ed 2d 12 (2014) ("For a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State."); *Burger King Corp. v. Rudzewicz*, 471 US 462, 472, 105 S Ct 2174, 85 L Ed 2d 528 (1985) (due process "fair warning" requirement is met when "the defendant has 'purposefully directed' his activities at residents of the forum, and the litigation results from alleged injuries that 'arise out of or relate to' those activities" (citations omitted)). Thus, we interpret ORCP 4 D consistently with the council's intention and the limits of the federal constitution and conclude that, under ORCP 4 D, a plaintiff's claim must arise out of or relate to at least one of the defendant's in-forum contacts falling within ORCP 4 D(1) or D(2). With that focus in mind, we turn to the jurisdictional facts that plaintiff argues establish jurisdiction over Manitex under ORCP 4 D.

Plaintiff makes two separate arguments in asserting that Manitex engaged in qualifying contacts with Oregon under ORCP 4 D. Plaintiff first asserts that Manitex's sales to Oregon customers and solicitation through its website, offering contact information for dealers serving Oregon customers, are sufficient contacts to establish jurisdiction under ORCP 4 D when there is an in-state injury. Based on our above discussion, we reject that argument because plaintiff's claim does not arise out of or relate to those contacts.

However, plaintiff also argues that Manitex's retrofit campaign for the SX57 cranes created sufficient contacts with Oregon under ORCP 4 D. Plaintiff argues that, through the field campaign, Manitex specifically targeted owners and former owners of the SX57 cranes to identify the current location and owners of the cranes so that Manitex could sell those owners retrofit kits to service their SX57 cranes where they were located. Plaintiff argues that it was

not "fortuitous" that ES&A, an Oregon company, sought to contact Manitex with questions about the retrofit for its crane, which was located in Oregon, because that contact is precisely what Manitex sought in its targeted field campaign.

Manitex disputes plaintiff's assertion that the field campaign resulted in it making any contact with Oregon and, even if it did, that it would be unreasonable to exercise jurisdiction over Manitex based on that contact. Manitex argues that it did not direct any activities at Oregon residents, asserting that its only contact with Oregon were emails initiated by ES&A, to which Manitex did not respond. Additionally, Manitex argues that it would be unreasonable under due process principles for an Oregon court to exercise jurisdiction over Manitex in this case because Manitex did not pursue contact with ES&A, attempt to solicit business from ES&A, or attempt to solicit any other customer for sales in Oregon, and, thus, Manitex could not anticipate being haled into court in Oregon.

Manitex's field-campaign conduct, on which plaintiff relies to establish Manitex's contacts with Oregon, is conduct from which plaintiff's claim arises or to which it relates because, as discussed above, 274 Or App at 58-59, plaintiff's claim is that Manitex negligently carried on its retrofit field campaign and that that negligence caused plaintiff injury. Thus, we proceed to address whether that conduct created sufficient additional contacts with Oregon under ORCP 4 D.

We begin with the wording of ORCP 4 D(1) because we conclude that Manitex's contacts with Oregon fall within that description of contacts. That provision applies when the defendant's additional contacts, at the time of the plaintiff's injury, include "[s]olicitation or service activities * * * carried on within this state by or on behalf of the defendant." Relying on the dictionary definition of "service," we have previously concluded that "service activities" include the "'perform[ance] of any of the business functions auxiliary to production or distribution.'" *Columbia Boat Sales v. Island Packet Yachts*, 105 Or App 85, 88, 803 P2d 283 (1990) (quoting *Webster's Third New Int'l Dictionary* 2075 (1976) (brackets in *Columbia Boat Sales*)). The definition

of "service," however, also includes an additional definition from the same section that is contextually relevant to ORCP 4 D(1), *viz*, "to repair or provide maintenance for." *Webster's Third New Int'l Dictionary* 2075 (unabridged ed 2002); *see also Columbia Boat Sales*, 105 Or App at 88 n 2 (noting that commentary to Wisconsin statute, on which ORCP 4 D was modeled, suggests that "service activities" "was intended to be broadly construed"). Repair and maintenance of a product line could also be understood to be a "business function auxiliary to production or distribution."

Manitex's field campaign constitutes a service activity under either of those definitions, and its offer to sell the retrofit kits constitutes solicitation. What Manitex really disputes is that those activities were "carried on within this state." We conclude that they were. The purpose of the field campaign, which started in 2003 and continued at least through plaintiff's injury (based on ES&A being able to obtain the retrofit kit post-injury), was to identify the location of affected SX57 cranes, identify the current owners of the cranes, ensure that the owners inspected the cranes, assist with servicing cranes that had missing bolts, advise owners of the needed retrofit, identify which SX57 cranes needed which retrofit kit, and sell the correct retrofit kit to the owner to be shipped to, and installed at, the location of the crane.

Manitex's service activities were purposeful and carried on within Oregon because the field campaign was directed at every forum in which an affected SX57 crane would be found, including ES&A's crane in Oregon—a forum in which the crane had been located since its ownership by SignArt. Manitex directly advised in its second advisory bulletin that it "is doing everything it can to locate all affected units" and that it was including the first bulletin and report to give "everyone an additional opportunity to inspect and/or report the condition and current location of their units." Had Manitex received the requested notice from SignArt in 2003 that SignArt had sold the crane to ES&A, Manitex would have contacted ES&A directly in Oregon with its second bulletin in 2005. Also, if Phoenix's database had shown that ES&A was the owner of the crane located in Oregon,

Manitex would have sought out ES&A directly, starting with its first bulletin. However, even without that new-owner information, Manitex's conduct was already directed at Oregon because Oregon was the location of the affected crane, even while owned by SignArt, which Manitex did contact directly with both advisory bulletins with the intention of providing service activities for the crane in Oregon. It was not through fortuity that Manitex had contact with Oregon; the contact occurred because Manitex targeted all SX57 crane owners with the intention of doing business with them in the locations where any affected crane would be found. As a result, we conclude that the trial court erred when it concluded that it did not have personal jurisdiction over Manitex under ORCP 4 D.

Finally, with respect to Manitex's "reasonableness" argument, to the extent that we are required to determine if an exercise of specific jurisdiction is "reasonable" when the basis for jurisdiction is ORCP 4 D rather than ORCP 4 L, which we do not decide, we conclude that Manitex did not establish that the exercise of jurisdiction in this case would be unreasonable. *See O'Neil*, 258 Or App at 830 ("If [under ORCP 4 L] a plaintiff meets that burden of production [to show that the plaintiff's claims arise out of or relate to sufficient in-forum contacts of the defendant], then the burden shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." (Quoting *Burger King*, 471 US at 477.)). The basis for Manitex's argument is that it did not seek to contact ES&A or solicit its business or the business of any other customer for sales in Oregon. However, we have already concluded the contrary. Manitex's expressed purpose in carrying out its field campaign was to seek contact with *all* SX57 crane owners, to service those cranes where they were located, and to solicit the owner's business, that is, to sell the owner a retrofit kit to be used where the crane was located, which included ES&A's crane in Oregon.

Based on Manitex's service and solicitation activities carried on within Oregon, from which plaintiff's claim against Manitex arose and to which it relates, we conclude that plaintiff established that the trial court had personal

jurisdiction over Manitex under ORCP 4 D. Accordingly, we reverse and remand.

Reversed and remanded.