Submitted January 4, 2019, reversed and remanded January 21, 2021

Shirley VAUGHN,
*Petitioner-Appellant,*

*v.*

Donald VAUGHN,
*Respondent-Respondent.*

Multnomah County Circuit Court
17DR08795; A167919

481 P3d 932

Daughter, an adult, appeals a judgment dismissing her petition for support from father, a resident of Nebraska, after the trial court granted father's motion to dismiss for lack of personal jurisdiction. Daughter argues that Oregon's version of the Uniform Interstate Family Support Act grants jurisdiction in this matter because, in part, daughter and father previously resided together in Oregon. Additionally, daughter argues that extending jurisdiction in this case would comport with due process under the United States Constitution. *Held*: The trial court erred. Father's unilateral decision to cut ties with this state did not preclude jurisdiction as to matters arising out of his significant contacts with Oregon, including living with and raising daughter here.

Reversed and remanded.

Patricia L. McGuire, Judge.

Benjamin M. Karlin filed the brief for appellant.

Lynn Shepard filed the brief for respondent.

Before DeHoog, Presiding Judge, and Aoyagi, Judge, and Kamins, Judge.

DeHOOG, P. J.

Reversed and remanded.

**DeHOOG, P. J.,**

Daughter, an adult, appeals a judgment dismissing her petition under ORS 109.010 for support from father, a resident of Nebraska, after the trial court granted father's motion to dismiss for lack of personal jurisdiction. On appeal, daughter argues that there is a statutory basis for personal jurisdiction and that extending jurisdiction over father would comport with due process and the United States Constitution. Father contends that he lacks the requisite minimum contacts with Oregon for the trial court to have jurisdiction over him. We agree with daughter and, accordingly, reverse.

When reviewing the dismissal of a matter for lack of personal jurisdiction, and, as here, "the historical facts are undisputed, we review for legal error the trial court's determination whether those facts establish personal jurisdiction over" the nonresident party. *Swank v. Terex Utilities, Inc.*, 274 Or App 47, 50, 360 P3d 586 (2015), *rev den*, 358 Or 551 (2016). We begin by summarizing those facts.

Daughter was born in 1993, and father adopted daughter in 1996, while he was married to mother. The family lived together in Oregon until mother and father divorced in 2000. Father remained in Oregon and paid support for daughter until 2002, at which point he moved to Nebraska. He has lived in Nebraska since 2002. While in Nebraska, father continued to make support payments for daughter until 2014, when daughter no longer qualified as a "[c]hild attending school" under ORS 107.108.[1] At that time, citing daughter's mental health disabilities, mother initiated a proceeding in Oregon against father in an attempt to modify their divorce judgment and obtain support for daughter as an adult under ORS 109.010.[2] *Vaughn and Vaughn*, 275 Or App 533, 534, 365 P3d 620 (2015). The trial court

---

[1] Subject to other requirements, ORS 107.108 allows for child support when the child is attending school and "[i]s 18 years of age or older and under 21 years of age." ORS 107.108(1)(a)(B).

[2] ORS 109.010 provides that "[p]arents are bound to maintain their children who are poor and unable to work to maintain themselves; and children are bound to maintain their parents in like circumstances."

dismissed the case for lack of personal jurisdiction. *Id.* at 535. On appeal, we reversed and explained:

> "Personal jurisdiction continues for a motion that is captioned in relation to the dissolution judgment, but we do not imply, nor decide, that it is proper to seek relief under ORS 109.010 as if it were a matter modifying a past dissolution judgment. *See* ORS 107.135(1)(a) (vacation or modification of a judgment for 'minor children and *** children attending school'). Nor do we decide whether it might be necessary for a party to initiate a separate proceeding to seek support for an adult child under ORS 109.010 and, necessarily, effect anew personal jurisdiction for that proceeding."

*Id.* at 537 (omission in original). On remand, no support was ordered.

This family comes before us again after daughter initiated a separate proceeding to establish a support order under ORS 109.010.[3] Father disputed personal jurisdiction and moved to dismiss daughter's petition. *See* ORCP 21 A(2) (authorizing motions to dismiss for "lack of jurisdiction over the person"). In response to father's motion, daughter argued, in part, that the court had personal jurisdiction under ORCP 4 B and ORS 110.518. ORCP 4 provides that an Oregon court "has jurisdiction over a party" under specific circumstances. ORCP 4 B, in turn, provides that a court has jurisdiction over a party "[i]n any action which may be brought under statutes or rules of this state that specifically confer grounds for personal jurisdiction over the defendant." Daughter argued that ORS 110.518(1)(c) and (d) conferred such grounds as to father. ORS 110.518(1)—part of Oregon's codification of the Uniform Interstate Family Support Act (UIFSA)—provides a list of instances where, "[i]n a proceeding to establish or enforce a support order or to determine parentage of a child, a tribunal of this state may exercise personal jurisdiction over a nonresident individual." ORS 110.518(1)(c) and (d), respectively, provide that a court may exercise jurisdiction in that context when "[t]he individual resided with the child in this state" or "[t]he individual

---

[3] Similar to the posture of the proceeding that was before us in 2015, we are only tasked with determining whether the court had personal jurisdiction over father in this proceeding, and we offer no opinion on the merits of daughter's efforts to establish a support order under ORS 109.010.

resided in this state and provided prenatal expenses or sup-
port for the child."[4] Father argued that, under ORCP 4 K(2),[5]
asserting personal jurisdiction over him was improper and
would violate his due process rights because he lacked the
requisite contacts with the State of Oregon.

The trial court granted father's motion. Apparently
accepting that daughter had established that the terms of
ORS 110.518(1)(c) and (d) were satisfied, the court nonethe-
less rejected daughter's argument that those statutes con-
ferred jurisdiction, reasoning that the 2001 commentary to
the UIFSA serves as legislative history and that it cautions
that "an 'overly literal construction' of the statute could pos-
sibly overreach due process." The court then determined
that father "does not have sufficient minimum contacts with
Oregon to make it fair to require him to defend the case in
Oregon." In reaching that conclusion, the court noted that
the facts of this case are similar to those presented in *Horn
and Horn*, 97 Or App 177, 775 P2d 338 (1989). The trial court
subsequently issued a general judgment dismissing daugh-
ter's petition, which daughter now appeals.

On appeal, the parties reprise the arguments that
they made in the trial court. In support of her argument
that jurisdiction is valid under ORCP 4 B and ORS 110.518,
daughter argues that the trial court overlooked aspects of
the relevant UIFSA commentary. Daughter acknowledges
that the commentary to the UIFSA cautions against " 'overly
literal construction[s]' " of the statute, but she contends that
the relevant commentary—specifically the commentary
accompanying the 2008 amendments to the UIFSA—also
contemplates extending jurisdiction in circumstances such
as those present here. Daughter separately argues, as she
did in the trial court, that personal jurisdiction is proper in
this matter under the "catchall provision" of ORCP 4 L. *See
Robinson v. Harley-Davidson Motor Co.*, 354 Or 572, 576-77,

---

[4] As daughter also notes, under the UIFSA, a " '[c]hild' means an individual,
whether over or under the age of majority, who is or is alleged to be owed a duty
of support by the individual's parent or who is or is alleged to be the beneficiary
of a support order directed to the parent." ORS 110.503(1).

[5] As we discuss below, ORCP K(2) extends personal jurisdiction over certain
domestic relations actions, but only for up to a year after a person has left Oregon
and acquired a residence or domicile outside the state.

316 P3d 287 (2013) (referring to ORCP 4 L as a "catchall provision"). Under ORCP 4 L, an Oregon court has jurisdiction over a party "in any action where prosecution of the action against a defendant in this state is not inconsistent with the Constitution of this state or the Constitution of the United States" even if jurisdiction is not established under any other basis provided in ORCP 4. According to daughter, exercising personal jurisdiction over father satisfies due process because this case arises from the relationship that father had with daughter in Oregon, and, she argues, father unilaterally left the state knowing that he was leaving his daughter and associated obligations behind in Oregon.

In response, father reprises his argument that, because this is a matter regarding support, the applicable section of ORCP 4 is ORCP 4 K rather than ORCP 4 B. And, according to father, ORCP 4 K "terminates personal jurisdiction one year after a respondent leaves the state." As a result, father argues, daughter's argument that ORCP 4 B and ORS 110.518 allow for jurisdiction here "creates a direct conflict" with ORCP 4 K. In father's view, ORS 110.518 is constrained by ORCP 4 K, and, because jurisdiction is not valid under ORCP 4 K, the trial court did not err. Father further argues that extending jurisdiction under ORS 110.518 would be, as the commentary to the 2008 amendments to the UIFSA cautions against, an "'overly literal construction'" of the statute that would run afoul of due process. Relying on federal and state case law construing the general limits of due process, father argues that he does not have sufficient contacts with Oregon to warrant an exercise of personal jurisdiction over him. Based on that case law, he argues that ORCP 4 L provides no broader justification for personal jurisdiction and points out that daughter has cited no cases that rely on ORCP 4 L as a basis for "expand[ing] jurisdiction in domestic cases."

As noted, we review whether a court has personal jurisdiction over a nonresident party as a question of law. *Albar and Najjar*, 292 Or App 146, 151 n 2, 424 P3d 774, *rev den*, 363 Or 677 (2018). "A valid judgment imposing a personal obligation on a defendant may be entered only by a court having personal jurisdiction over the defendant." *Id.* at 151. A "plaintiff has the burden of alleging and

proving facts sufficient to establish personal jurisdiction." *Munson v. Valley Energy Investment Fund*, 264 Or App 679, 700, 333 P3d 1102 (2014) (internal brackets and quotation marks omitted). "In determining whether an Oregon court has long-arm jurisdiction over a nonresident defendant, we look to ORCP 4." *Swank*, 274 Or App at 49. "Personal jurisdiction may be 'general' under ORCP 4 A, 'specific' under one of the provisions in ORCP 4 B through K, or 'specific' under the 'catchall' provision of ORCP 4 L." *Id.* at 49-50. Even if the conditions in one of the sections of ORCP 4 are met, we must nonetheless consider whether extending jurisdiction in that instance would comport with due process. *See Albar*, 292 Or App at 153 (examining whether "jurisdiction comported with the guarantees of due process" after determining that the trial court had jurisdiction over father under ORCP 4 L and ORS 110.518); *see also Biggs v. Robert Thomas, O.D., Inc.*, 133 Or App 621, 626, 893 P2d 545 (1995) (although "subsections B through K are patterned after court decisions identifying fact situations in which jurisdiction is proper in the light of due process standards," in such instances, "it is incumbent upon the court to ensure that the exercise of personal jurisdiction comports with due process requirements").

Accordingly, we begin our analysis with ORCP 4 which, in relevant part, provides:

"Personal jurisdiction.   A court of this state having jurisdiction of the subject matter has jurisdiction over a party served in an action pursuant to Rule 7 under any of the following circumstances:

"* * * * *

"B   Special jurisdiction statutes.   In any action which may be brought under statutes or rules of this state that specifically confer grounds for personal jurisdiction over the defendant.

"* * * * *

"K   Certain marital and domestic relations actions.

    "K(1)   In any action to determine a question of status instituted under ORS chapter 106 or 107 when the plaintiff is a resident of or domiciled in this state.

"K(2)  In any action to enforce personal obligations arising under ORS chapter 106 or 107, if the parties to a marriage have concurrently maintained the same or separate residences or domiciles within this state for a period of six months, notwithstanding departure from this state and acquisition of a residence or domicile in another state or country before filing of such action; but if an action to enforce personal obligations arising under ORS chapter 106 or 107 is not commenced within one year following the date upon which the party who left the state acquired a residence or domicile in another state or country, no jurisdiction is conferred by this subsection in any such action.

"K(3)  In any proceeding to establish parentage under ORS chapter 109 or 110, or any action for declaration of parentage where the primary purpose of the action is to establish responsibility for child support, when the act of sexual intercourse which resulted in the birth of the child is alleged to have taken place in this state.

"L  Other actions.  Notwithstanding a failure to satisfy the requirement of sections B through K of this rule, in any action where prosecution of the action against a defendant in this state is not inconsistent with the Constitution of this state or the Constitution of the United States."

(Boldface omitted.)

To be clear, we note that the issue presented on appeal is not, as father suggests, limited to whether ORCP 4 K confers jurisdiction. As the text of ORCP 4 illustrates, ORCP 4 K acts to grant specific jurisdiction under certain circumstances; it does not serve to *limit* the existence of jurisdiction to those circumstances. *See Swank*, 274 Or App at 49-50 (specific jurisdiction may be appropriate "under one of the provisions in ORCP 4 B through K, or 'specific' under the 'catchall' provision of ORCP 4 L"). Thus, we disagree with father's characterization of ORCP 4 K(2) as "terminat[ing]" jurisdiction after a year. Although it is true that ORCP 4 K(2) will not confer personal jurisdiction over a nonresident party more than a year after that party has left the state, that does not preclude an exercise of jurisdiction where otherwise appropriate. *See Horn*, 97 Or App at 179 (noting that ORCP 4 K(2) did not apply "because husband did not live in Oregon within one year of the date when

wife filed the petition" for dissolution and explaining that "[j]urisdiction existed, if at all, under ORCP 4 L"); *see also State ex rel Circus Circus Reno, Inc. v. Pope*, 317 Or 151, 156, 854 P2d 461 (1993) ("[W]here the plaintiff alleges facts bringing his or her case within a specific provision of ORCP 4 B through K, jurisdiction will be found; lacking such facts, court will consider application of ORCP 4 L." (Citing *State ex rel Hyrdaulic Servocontrols v. Dale*, 294 Or 381, 384-85, 657 P2d 211 (1982).)). In other words, daughter's reading of ORCP 4 B and ORS 110.518 does not create a direct conflict with ORCP 4 K as father suggests.[6]

Moreover, ORCP 4 K has no bearing on daughter's petition for support under ORS 109.010. By its terms, ORCP 4 K(2) applies to actions under ORS chapters 106 and 107, whereas daughter's action arises under ORS chapter 109. And, as father acknowledges, "[a]ny obligation under ORS 109.010 arises at a different time and under different circumstances and, presumably, after any ORS 107 obligations have concluded." Thus, although ORCP 4 K(2) does not grant specific jurisdiction over father in this matter, that fact does not resolve the question whether the trial court could lawfully exercise jurisdiction over him.[7]

With that clarification, we turn to daughter's argument that the court has personal jurisdiction pursuant to ORCP 4 B and ORS 110.518. Daughter argues that ORS 110.518 "specifically confer[s] grounds for personal jurisdiction over" father under ORCP 4 B, because father resided with her in Oregon and resided in Oregon while paying support for her. ORS 110.518(1)(c), (d). As a preliminary matter, it does appear that the undisputed facts of this case satisfy both ORS 110.518(1)(c) and (d). Father, daughter, and mother resided together as a family in Oregon from 1996 until 2000. After the divorce, father remained in Oregon

---

[6] To the extent that father argues that ORCP 4 K(2) provides a temporal limit for specific jurisdiction in all domestic cases or is otherwise representative of the limits of due process and fundamental fairness in domestic cases, we find no support for that contention in the text of the rule or anywhere else.

[7] We note that, unlike ORCP 4 K(2), ORCP 4 K(3) does grant jurisdiction in actions under ORS chapter 109. However, that rule extends only to actions concerning parentage, which is not at issue here. As a result, ORCP 4 K(3) also has no bearing on daughter's action for support under ORS 109.010.

until 2002 and paid support for daughter during that time. Therefore, daughter has established that this case satisfies the specific requirements of ORCP 4 B and ORS 110.518.

However, as the trial court correctly understood, our analysis does not end there. We must ensure that extending jurisdiction under those provisions "comport[s] with the guarantees of due process." *Albar*, 292 Or App at 153. Father's argument mirrors the trial court's ruling in identifying two sources of authority—the intended scope of the UIFSA and related case law—that, in father's view, demonstrate that an exercise of jurisdiction here would violate father's due process rights.

As noted, father argues that the commentary to the UIFSA recognized that adhering to the literal terms of the statute might not always comply with due process. And, as the trial court observed, the commentary to the UIFSA informs its meaning in a manner much like legislative history would, because the Oregon legislature adopted the uniform statute as a whole.[8] *See State of Oregon DCS v. Anderson*, 189 Or App 162, 176, 74 P3d 1149, *rev den*, 336 Or 92 (2003) (relying on commentary to an earlier version of UIFSA to inform the meaning of the corresponding Oregon statute and noting that "[w]hen a statute has been enacted in response to federal legislation, that legislation is relevant to determining the intended meaning of the state enactment").

We disagree, however, that the specific commentary that father points to dictates the outcome of this case. In our view, both father and the trial court appear to have overlooked the most relevant aspects of the UIFSA commentary.[9] As daughter notes, the commentary specifically

---

[8] Video Recording, House Committee on Judiciary, SB 604 A, May 12, 2015, at 25:15 (comments of Kate Cooper Richardson, Director of Oregon Child Support Program), http://olis.leg.state.or.us (accessed Dec 23, 2020) (Oregon legislature was tasked with adopting the 2008 version of the UIFSA verbatim, with minor stylistic changes, in order to maintain federal funding).

[9] The trial court relied on the commentary to the 2001 amendments to the UIFSA. However, at the time of the order, Oregon had adopted the 2008 amendments to the UIFSA in 2015. Or Laws 2015, ch 298, §§ 1-103. We, therefore, rely on the commentary to those later amendments, which both parties discuss on appeal.

contemplates the factual scenario present in this case. The commentary explains:

> "Subsections [(1)(c) through (1)(f)] identify specific fact situations justifying the assertion of long-arm jurisdiction over a nonresident. Each provides an appropriate affiliating nexus for such an assertion, when judged on a case-by-case basis with an eye on procedural and substantive due process. Further, each subsection does contain a possibility that an overly literal construction of the terms of the statute will overreach due process. For example, subsection [(1)(c)] provides that long-arm jurisdiction to establish a support order may be asserted if 'the individual resided with the child in this state.' The typical scenario contemplated by the statute is that the parties lived as a family unit in the forum state, separated, and one of the parents subsequently moved to another state while the other parent and the child continued to reside in the forum. * * *"

Uniform Interstate Family Support Act (Last Amended or Revised in 2008) with Prefatory Note and Comments, *reprinted in* 43 Family Law Quarterly 75, 98 (2009) (brackets reflect the UIFSA equivalent in ORS 110.518).

Although that commentary observes that an "overly literal" application of the UIFSA may overstep due process, it goes on to describe what has occurred in this case as the "typical scenario contemplated by the statute." Father, daughter, and mother lived together as a family in Oregon for at least four years.[10] Two years after father and mother divorced in 2000, father moved to another state, Nebraska, while mother and child continued to reside in Oregon. Notably, when considering similar circumstances in *Albar*, we held that jurisdiction under ORS 110.518 was appropriate. In that case, the mother and the father were both citizens of Saudi Arabia, and they married and had children there. *Albar*, 292 Or App at 148. The family then moved to Oregon and resided together in this state. *Id.* The father and mother eventually separated, and the father returned to Saudi Arabia when his visa expired. *Id.* The mother, however, remained with the parties' minor children in Oregon. *Id.* Several years after the father had left the country, the mother initiated a proceeding

---

[10] It is not apparent from the record whether or for how long the three lived as a family before father adopted daughter.

for dissolution of marriage, custody, and child support. *Id.* at 149-50. We concluded that the trial court "had statutory authority to assert jurisdiction over [the] father for the purposes of establishing a child support order based on ORS 110.518 (1)(c)—because [the] father resided here with the children—and ORS 110.518(1)(e)—because the children lived here due to [the] father's acts and directives."[11] *Id.* at 153. As in *Albar*, we conclude here that ORS 110.518, the relevant Oregon portion of the UIFSA, was intended to provide a statutory basis for jurisdiction under the present circumstances.

    We further conclude that the applicable case law demonstrates that extending jurisdiction under ORS 110.518 does not violate father's due process rights. In making that determination, we apply the standard set forth by the United States Supreme Court. *Albar*, 292 Or App at 153-54 (applying the "minimum contacts" standard announced in *International Shoe Co. v. State of Washington, Office of Unemployment Compensation and Placement*, 326 US 310, 316, 66 S Ct 154, 90 L Ed 95 (1945)). The Oregon Supreme Court has consolidated the federal standard into a three-part inquiry:

> "First, the defendant must have purposefully directed its activities at this state. Second, the litigation must arise out of or relate to at least one of those activities. That particular activity must be a but-for cause of the litigation and provide a basis for an objective determination that the litigation was reasonably foreseeable. Finally, the exercise of jurisdiction must otherwise comport with fair play and substantial justice."

*Robinson*, 354 Or at 594 (internal quotation marks and citations omitted).

---

[11] Our holding with respect to ORS 110.518 in *Albar* is consistent with the application of the UIFSA in other jurisdictions. *See Hudson County Department of Family Services v. Mateo*, 2020 WL 1170806 at \*1-\*3 (NJ Super Ct App Div, March 11, (2020)) (New Jersey courts had specific jurisdiction over father in action for child support under New Jersey's version of the UIFSA, because, in part, father resided with the children in the state before moving to Delaware); *see also In Re Gunn*, 2015 WL 150078 at \*3 (Tex App, Jan 8, (2015)) (Texas courts had jurisdiction over father in an action to establish parentage and obtain support under its version of the UIFSA when mother, father, and child resided together in Texas before father left Texas permanently to reside in Tennessee, reasoning, in part, that father's "extended physical presence in Tennessee does not diminish those contacts with Texas that gave rise to the suit for child support").

Again, we rely on our decision in *Albar* to conclude that the exercise of jurisdiction is appropriate in this case. After having concluded in *Albar* that ORS 110.518 provided a statutory basis for jurisdiction, we further concluded that jurisdiction was appropriate under ORCP 4 L and the limits of due process because the litigation arose out of the father's contacts with Oregon, those contacts were constitutionally sufficient, and the exercise of jurisdiction otherwise comported with fair play and substantial justice. *Id.* at 153-54. We noted that, in living as a family and working here, the father purposefully directed contacts with Oregon before returning to Saudi Arabia. *Id.* at 154-55. Additionally, the litigation arose directly out of the "marital and familial relationship as it existed in Oregon." *Id.* at 155. Finally, we reasoned that it was fair to extend jurisdiction over the father, despite the burdens associated with his residence abroad, because the mother and the children had a compelling interest in obtaining relief where they resided, and because "Oregon has a strong interest in establishing and enforcing child support actions on behalf of children who reside here." *Id.* at 158-59.

This case does not meaningfully differ from *Albar*. Here, father created purposeful contacts in Oregon when he resided with daughter for at least four years and then supported her while remaining in Oregon for an additional two years after his divorce from mother. He unilaterally left Oregon for Nebraska while mother and daughter stayed in Oregon, and this litigation arose from the familial relationship that he had left behind. As we stated in *Albar*, "[f]ather cannot avoid the jurisdiction of our courts in this matter simply by voluntarily terminating his contacts with the state." *Id.* at 158. Lastly, although litigating in Oregon may be burdensome for father because he now lives out of state, we conclude, as we did with respect to the father in *Albar*, who lived abroad, that the balance of fairness and substantial justice lies with resolving the child support issues here in Oregon.[12] *See id.* at 159.

_____

[12]  To the extent that father might argue that *Albar* is distinguishable in that regard because that case concerned an action for support under ORS chapter 107, not ORS 109.010, such an argument would appear to be based on the notion that it would be unfair for a state to maintain jurisdiction over the father of an adult

Finally, we address the trial court's reliance on *Horn* and resulting conclusion that jurisdiction was not appropriate here, both of which father defends. Once more, we look to *Albar*. In *Albar*, the father argued that jurisdiction was not proper because his case was "'essentially identical'" to *Horn*. *Id*. at 156. We summarized that, in *Horn*,

> "the family lived in Oregon before moving to California, after which they ceased to have any meaningful contacts with Oregon. After several years of living in California, the marriage broke up and the mother and children moved back to Oregon, while the father remained in California. The mother initiated dissolution proceedings in Oregon in which she sought determinations related to custody, child support, and division of personal property. At that time, [the] father had communicated with the family in Oregon but otherwise had no meaningful connections with the state."

*Albar*, 292 Or App at 155-56. In determining that *Horn* was distinguishable, we noted that the family in that case had "severed ties with Oregon and moved to California * * * [and] [t]he mother's unilateral decision to then return to Oregon after her separation from the father likely reestablished jurisdiction in Oregon over her, but her choice did not reestablish contacts with Oregon on the father's behalf."[13] *Id*. at 156. Here, father's case, like the father's in *Albar*, is distinguishable in significant part from *Horn* because it was father's unilateral action in leaving the state in 2002 that resulted in his breaking off significant contact with Oregon. Therefore, father's decision to limit his contact with Oregon "does not diminish his long history of significant and meaningful contacts with the state while he lived here with his family, which includes raising [daughter] here." *Id*.

---

child, even though the father had directed purposeful contacts in the state when the child was a minor. However, the UIFSA explicitly contemplates child support orders for adult children, and ORS 110.518(1)(c) and (d) are not limited to minor children. *See* ORS 110.503(1). Any further argument in that regard would be an argument going to the merits of establishing a child support order under ORS 109.010, which are not within the scope of this appeal and as to which we express no opinion.

[13] Although our decision in *Horn* predated the commentary and changes to the UIFSA we discuss above, 308 Or App at 627-28, we note that the facts of *Horn* are analogous to an example provided later in the commentary of a case in which the "literal" application of the statute might raise due process concerns.

In light of the family's history in Oregon and father's unilateral decision to cut his ties to this state, the trial court was authorized by statute to exercise personal jurisdiction over father, ORS 110.518(1)(c) and (1)(d), and that exercise of jurisdiction would not violate father's due process rights. Accordingly, the trial court erred in concluding otherwise and dismissing daughter's petition for support.

Reversed and remanded.