Argued and submitted June 4, affirmed September 17, 2014

STATE ex rel Wendy Jill SIMONS,
*Petitioners-Respondents,*

*v.*

Alton Dan SIMONS,
*Respondent-Appellant.*

Lane County Circuit Court
171219549; A153238

336 P3d 557

George W. Kelly argued the cause and filed the brief for appellant.

Inge D. Wells, Assistant Attorney-in-Charge, argued the cause for respondent State of Oregon. With her on the brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

No appearance by respondent Wendy Jill Simons.

Before Sercombe, Presiding Judge, and Hadlock, Judge, and Tookey, Judge.

TOOKEY, J.

**TOOKEY, J.**

In this proceeding under ORS 416.400 to 416.465 to establish a child support order, respondent Alton Simons (Simons) appeals from a judgment of the circuit court determining that he is the legal father of J, petitioner Wendy Simons' (mother) child, and ordering him to pay child support in the amount of $466 per month until J reaches the age of 18 or until J reaches the age of 21 if he is attending school as defined under Oregon law. Although Simons has a close and loving relationship with J, there is no dispute that he is not the child's biological father. The primary question on appeal is whether, in light of that fact, the trial court erred in entering the support order. We conclude that the trial court did not err, and we therefore affirm.

As a preliminary matter, we provide an overview of the statutory context. The State of Oregon is authorized in certain circumstances to initiate proceedings for the establishment and enforcement of child support obligations.[1] The applicable procedures are set forth in ORS 416.400 to 416.465 and include provisions for administrative review and *de novo* judicial appeal. When, as here, the parties reside in different states, a proceeding for the establishment or enforcement of a child support obligation is also subject to the Uniform Interstate Family Support Act (UIFSA), ORS chapter 110. The two statutory schemes are mutually consistent. In cases subject to UIFSA, an Oregon court authorized to consider a child support matter is required to apply the procedural and substantive law of Oregon and to "determine the duty of support and the amount payable in accordance with the law and support guidelines of this state." ORS 110.348. Thus, in child support proceedings subject to UIFSA, the procedures of ORS 416.400 to 416.465 also apply.

A district attorney is among the persons authorized to initiate proceedings under ORS 416.400 to 416.465. ORS

---

[1] The state initiates those proceedings through the Administrator of the Division of Child Support of the Department of Justice, a district attorney, or an authorized representative, ORS 416.415; ORS 416.400(1); ORS 25.010(1). The administrator's responsibilities also include the initiation of procedures for modification of support orders (the obligor, the obligee, and other specified parties may also move for modification), ORS 416.425, the determination of arrearages, ORS 416.429, and the establishment of paternity, ORS 416.430.

416.400(1); ORS 25.010(1). Under ORS 416.415, when the district attorney determines that a parent is responsible for the financial support of a child, the district attorney may issue a "notice and finding of financial responsibility" to the parent setting forth the duty of support and the amount payable. This case was initiated through that procedure.

The pertinent facts are undisputed. The child was born in Louisiana on April 29, 2003. Mother and Simons were married at the time of his birth, and Simons is named as the father on the birth certificate. Mother and Simons were divorced in Louisiana on March 23, 2004. The dissolution judgment names two children of the marriage, but does not mention J and does not provide for child support.

Mother and J live in Louisiana, and Simons lives in Oregon. In March 2012, the Lane County District Attorney received a request to establish a child support order for J, pursuant to ORS 416.415(1).[2] In May 2012, the district attorney issued a "notice and finding of financial responsibility" pursuant to ORS 416.415 proposing that Simons be ordered to pay mother child support of $294 per month and past support of $588.

On June 12, 2012, Simons requested a hearing, ORS 416.415(6),[3] and, pursuant to ORS 416.427,[4] an administrative

---

[2] On this record, it is not clear whether the request came from the Louisiana child support enforcement agency or from mother directly, but that fact is not significant in this case. Under both ORS 416.415(1) and ORS 110.342(3), either may initiate a proceeding for support. The administrative law judge's order in this case states that the district attorney "received a request for IV-D services to establish child support" in this case. OAR 137-055-1020(37) provides:

"'Title IV-D' refers to Title IV-D of the Social Security Act, which requires each state to create a program to locate noncustodial parents, establish paternity, establish and enforce child support obligations, and collect, distribute and disburse support payments. Recipients of IV-A (TANF), IV-E (foster care), XIX (Medicaid), and Oregon Youth Authority (OYA) assistance are referred to their state's IV-D child support program. States must also accept applications from families who do not receive assistance, if requested, to assist in collection of child support. Title IV-D also established the federal Office of Child Support Enforcement."

[3] ORS 416.415(6) provides that, "[i]f a timely written response [to the notice and finding] setting forth objections and requesting a hearing is received by the appropriate office, a hearing shall be held under ORS 416.427."

[4] Under ORS 416.427, an administrative law judge from the Office of Administrative Hearings is assigned to conduct hearings and issue an order on review of a notice and finding of financial responsibility.

law judge (ALJ) for the Office of Administrative Hearings held a hearing and issued an order on August 27, 2012, setting Simons's child support obligation at $568 per month. At the hearing, Simons asserted that he is not J's biological father. The ALJ concluded that the record was sufficient to show that Simons is J's legal parent, because Simons is identified as the father on the child's birth certificate, and because of a presumption of legal paternity under ORS 109.070(1)(a).[5]

Simons requested a hearing *de novo* in the circuit court pursuant to ORS 416.427(6).[6] Simons contended that, although he has a close relationship with J, and sends money when he is able, he has known since before the child's birth that he is not the child's biological father and, for that reason, he should not be subject to an order for child support. After a hearing, the court issued a general judgment on December 10, 2012, finding that Simons had not rebutted a presumption of paternity, that Simons is J's legal father, and that Simons should pay mother child support of $466 per month, to continue until J reaches age 18 or age 21 if attending school.

As previously mentioned, because Simons resides in Oregon and mother and the child reside in Louisiana, this proceeding is subject to the UIFSA, ORS chapter 110. ORS 110.342(2) describes the types of proceedings subject to the UIFSA, and those include proceedings for the establishment of an order for child support and proceedings for the determination of parentage. If no other state has issued a support order entitled to recognition in Oregon, a person or support enforcement agency from another state may seek to establish a child support order against a parent in Oregon. ORS

---

[5] Under ORS 109.070(1)(a),

"[a] man is rebuttably presumed to be the father of a child born to a woman if he and the woman were married to each other at the time of the child's birth, without a judgment of separation, regardless of whether the marriage is void."

[6] ORS 416.427(6) provides:

"Appeal of the order of the administrative law judge *** may be taken to the circuit court of the county in which the order [requiring payment of support] has been entered pursuant to ORS 416.440 for a hearing de novo."

110.392(1). When a tribunal of this state receives a petition or pleading for an initial determination of child support, it is a "responding tribunal"[7] and is authorized to "[i]ssue or enforce a support order, modify a child support order or render a judgment to determine parentage[.]" ORS 110.351(2)(a). The trial court in this case indicated that it was issuing a support order pursuant to that statute.

As a preliminary matter, Simons contends that the Louisiana dissolution judgment constitutes a "child support order" under UIFSA, to which an Oregon tribunal must defer, and that the trial court therefore erred in entering a child support order. We reject the contention. As pertinent here, for purposes of UIFSA, ORS 110.303(21) defines a "support order" as

> "a judgment, decree or order, whether temporary, final or subject to modification, for the benefit of a child * * * which provides for monetary support[.]"

The Louisiana judgment does not order payment of support for J. It does not even mention the child. Thus, we conclude that the Louisiana judgment is not a child support order under UIFSA. Simons acknowledges that there is no other order or judgment that establishes a support obligation for J. Because there is no previous order of support by another state, the trial court had authority to establish an order of

---

[7] ORS 110.303(16) defines a "responding state" as "a state in which a proceeding is filed or to which a proceeding is forwarded for filing from an initiating state under this chapter or a law substantially similar to this chapter[.]" A "responding tribunal" is "an authorized tribunal in a responding state." ORS 110.303(17). The UIFSA Commentary provides that, "[u]nder UIFSA, a tribunal may serve as a responding tribunal even when there is no initiating tribunal." Uniform Interstate Family Support Act § 203 (1996). ORS 110.303(22) defines a "tribunal" as "a court, administrative agency or quasi-judicial entity authorized to establish, enforce or modify support orders or to determine parentage." ORS 110.304 provides:

> "The tribunals of this state are the circuit court, the administrator [of the Support Enforcement Division of the Oregon Department of Justice, a district attorney, or the administrator's or a district attorney's authorized representative], the Department of Justice or an administrative law judge of the Employment Department, as appropriate."

*See also* ORS 416.419 ("The administrator may act as a tribunal described in ORS 110.304 in establishment of paternity or of a child support order[.]").

support for J in the first instance. ORS 110.351(2)(a); ORS 110.392 (1).

In his first assignment, Simons contends that the trial court erred in entering the order of support, because he is not the child's father. The state responds that the child's paternity is not at issue in this proceeding because, under ORS 110.381,

"[a] party whose parentage of a child has been previously determined by or pursuant to law may not plead nonparentage as a defense to a proceeding under this chapter."

It is undisputed that there has been no prior judicial or administrative determination of paternity. The initial request to the district attorney did not include any information that suggested that paternity was in dispute. The state concluded that Simons's parentage of J was not at issue because his name was on the birth certificate and because of a presumption under Louisiana law that the husband of the child's mother is the father of a child born during the marriage. At the time of J's birth, Louisiana Civil Code article 184 provided:

"The husband of the mother is presumed to be the father of all children born or conceived during the marriage."[8]

The state contends that, in light of the unrebutted presumption of paternity under Louisiana law, Simons is presumed and, therefore, "previously determined" under Louisiana law to be J's father, that is, by operation of law, and may not plead nonparentage as a defense.

Simons replies that he may challenge the presumption of paternity in this proceeding, because a presumption does not constitute a previous *determination* of paternity. He asserts, further, that the evidence presented in the trial court overcomes the presumption.

---

[8] With its amendment in 2005, Louisiana's presumption of paternity is now set forth at Louisiana Civil Code article 185. Article 185 provides, "[t]he husband of the mother is presumed to be the father of a child born during the marriage or within three hundred days from the date of the termination of marriage." As noted in the Revision Comments to House Bill No. 91, Act 192, Louisiana 2005 Regular Session, the amendment "does not change the law" related to the presumption of parentage.

Thus, the case presents the question whether Simons's paternity has been "previously determined by or pursuant to law," by operation of Louisiana's statutory presumption. We consider that question of statutory construction under the analytical template articulated in *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009), by first examining the statute's text in context, considering any relevant legislative history, and proceeding, if necessary, to general maxims of statutory construction.

We begin with the statutory text. Although UIFSA includes many definitions, it does not define the phrase "previously determined by or pursuant to law." Pertinent dictionary definitions of the word "determine" include:

> "**1 a :** to fix conclusively or authoritatively <a council was set up to ~ national policy> **b :** to settle a question or controversy about **:** decide by judicial sentence <the court heard and *determined* the plea>"

*Webster's Third New Int'l Dictionary* 616 (unabridged ed 2002) (emphasis and boldface in original); *see Dept. of Human Services v. J. B.*, 248 Or App 22, 33 n 12, 273 P3d 196 (2012) (citing same definition). Under the *Webster's* definition of the word "determine," a thing is "determined" when it has been decided or settled conclusively.[9] The definition also suggests that the thing has been determined by decision. The common-usage definition thus supports Simons's view that there must be some type of conclusive determination, decision, or adjudication of parentage to foreclose a defense of nonparentage under ORS 110.381.

But that common-usage definition is not necessarily inconsistent with the state's position—that paternity can be "determined" by operation of law. ORS 110.381 refers to paternity having been previously determined "*by* *** law*." (Emphasis added.) UIFSA defines "law" as including "decisional and statutory law and rules and regulations having the force of law." ORS 110.303(11). The same phrasing of ORS 110.381 is used in ORS 110.392(2), under which a

---

[9] *Black's Law Dictionary* 480 (8th ed 2004) defines the word "determination" as "[a] final decision of a court or administrative agency <the court's determination of the issue>."

tribunal has authority to issue a temporary child support order if "the respondent has been determined by or pursuant to law to be the parent."

In Oregon, there are many circumstances under which paternity arises by operation of law, without judicial intervention. For example, ORS 109.070(1)(e) provides that paternity may be established

"[b]y filing with the State Registrar of the Center for Health Statistics the voluntary acknowledgment of paternity form as provided for by ORS 432.287. Except as otherwise provided * * * this filing establishes paternity for all purposes."

Paternity may be resolved by marriage of the parents after the birth of the child, ORS 109.070(1)(c), or by having established paternity through a voluntary acknowledgment of paternity process in another state, ORS 109.070(1)(f). ORS 109.070(1)(g) provides that paternity may be "established or declared by other provision of law." *See also Shineovich and Kemp*, 229 Or App 670, 686, 214 P3d 29, *rev den*, 229 Or 670 (2009) (consent to artificial insemination under ORS 109.243 creates legal parentage by operation of law, with no need for judicial or administrative filings or proceedings). In each of those circumstances, parentage is determined "by law." We conclude that the state's proposed construction, that ORS 110.381 applies when paternity has been determined by operation of law, is most consistent with the statute's text ("previously determined *by* or pursuant to law") as well as its context.[10]

---

[10] UIFSA is a uniform law that has been adopted in Oregon, and its official commentary serves as legislative history. *State of Oregon DCS v. Anderson*, 189 Or App 162, 169-70, 74 P3d 1149, *rev den*, 336 Or 92 (2003) (UIFSA official commentary constitutes legislative history); *Mallon v. Cudahey*, 177 Or App 614, 619, 38 P3d 946 (2001) (referring to UIFSA commentary as legislative history); *see Jeld-Wen, Inc. v. PacifiCorp*, 240 Or App 124, 129, 245 P3d 685 (2010) ("Commentary to a uniform law adopted in Oregon serves as legislative history."). The state cites the comment to the section that Oregon adopted as ORS 110.381 as supporting its construction of ORS 110.381. Although the comment emphasizes that a UIFSA proceeding does not provide a forum for a collateral attack on a determination of paternity, is not particularly enlightening on the question presented here:

"Arguably this section does no more than restate the basic principle of *res judicata*. However, there is a great variety of state law regarding

We move on to the question whether the state is correct that, in this case, Simons's paternity has been previously determined by operation of Louisiana's presumption of paternity. Although, in determining a support obligation, a responding state is required to apply the state's own procedural and substantive law, ORS 110.348 (except as otherwise provided in ORS chapter 110), we agree with the state that, in determining whether a defense of nonparentage may be raised, the law that governs is the law of the state where parentage of the child is asserted to have "been previously determined."

As we have noted and as Simons acknowledges, under Louisiana law, there is a presumption that he is the child's father, because he was married to mother at the time

---

presumptions of parentage and available defenses after a prior determination of parentage.

"This section is intended neither to discourage nor encourage collateral attacks in situations in which the law of a foreign jurisdiction is at significant odds with local law. If a collateral attack on a parentage decree is permissible under the law of the issuing jurisdiction, such an action must be pursued in that forum and not in a UIFSA proceeding. In sum, this section mandates that a parentage decree rendered by another tribunal is not subject to collateral attack in a UIFSA proceeding. Of course, an attack on an alleged final order on a fundamental constitutional ground is permissible in the forum state, such as a denial of due process because of a failure of notice and opportunity to be heard or a lack of personal jurisdiction over a party who did not answer or appear."

Comment, UIFSA, § 315 (1996). That discussion supports the view that "parentage has been previously determined by or pursuant to law" if there has been a previous adjudication of paternity by a tribunal. But it does not exclude determinations of paternity by operation of law. The comment continues:

"Similarly, the law of the issuing state may provide for a determination of parentage based on certain specific acts of the obligor acknowledging parentage as a substitute for a decree, *i.e.*, signing the child's birth certificate or publicly acknowledging a duty of support after receiving the child into his home.

"UIFSA also is neutral regarding a collateral attack on such a parentage determination. The responding tribunal must give effect to such an act of acknowledgment of parentage if it is recognized as determinative in the issuing state. The consistent theme of this section is that a collateral attack cannot be made in a UIFSA proceeding."

*Id.* That part of the comment supports the view that certain acts of the parent will substitute for a judgment of paternity but, once again, does not directly address whether a statutory presumption of paternity should be treated as a parentage determination.

of the child's birth.[11] La Civ Code art 184. Louisiana law considers the presumption of paternity to be "one of the strongest presumptions in the law." *Phillips v. Phillips*, 467 So 2d 132, 134-35 (La App 3 Cir 1985). In *Pociask v. Moseley*, 122 So 3d 533, 538 (La 2013), the Louisiana Supreme Court noted that the presumption is one that has been "zealously guard[ed]" by the courts. *See also Gallo v. Gallo*, 861 So 2d 168, 173-74 (La 2003) (describing historical position of Louisiana courts to zealously guard and enforce the presumption and that "there is a public interest in dispelling doubts as to legitimacy which demands the establishment of a relatively short time for bringing challenges").

However, paternity established by presumption under Louisiana law may be rebutted through "disavowal." Disavowal is accomplished under Louisiana law through a suit to disavow paternity, which must be brought within the time prescribed by statute.[12] At the relevant time, Louisiana Civil Code article 189 provided:

"A.   A suit for disavowal of paternity must be 'filed within one year after the husband learned or should have learned of the birth of the child[.] * * *

"B.   Nevertheless, the suit may be filed within one year from the date the husband is notified in writing that a party in interest has asserted that the husband is the father of the child, if the husband lived continuously separate and

---

[11] Because father and mother were married at the time of J's birth, there is also a rebuttable presumption of legal paternity under Oregon law. ORS 109.070(1)(a) provides:

"A man is rebuttably presumed to be the father of a child born to a woman if he and the woman were married to each other at the time of the child's birth, without a judgment of separation[.]"

[12] Prior to 2005, Louisiana Civil Code article 187 provided that a husband could disavow paternity by a preponderance of the evidence. Article 187 was amended in 2005 to provide that "[t]he husband may disavow paternity of the child by clear and convincing evidence that he is not the father."

Under Oregon law, in civil proceedings, a statutory presumption may be overcome by a preponderance of the evidence. *See* OEC 308 (in a civil proceeding "a presumption imposes on the party against whom it is directed the burden of proving that the nonexistence of the presumed fact is more probable than its existence"); *Lawrence v. Clackamas County*, 164 Or App 462, 992 P2d 933 (1999) (discussing generally the legal effect of presumptions).

apart from the mother during the three hundred days immediately preceding the birth of the child."[13]

Louisiana courts have described that statutory period for bringing a suit to disavow paternity as "peremptive," meaning that if a suit to disavow paternity was not brought within the statutory period, the right to disavow paternity and to rebut the presumption was lost. *Pociask*, 122 So 3d at 539; *Gallo*, 861 So 2d at 175 ("[I]n the absence of a husband's action to disavow within the statutory period, the right to assail the legitimacy of a child born during a marriage becomes extinct[.]"). In effect, the presumption became conclusive. Furthermore, an unrebutted presumption of paternity in Louisiana conclusively determines legal parentage by operation of law. *State v. Walker*, 700 So 2d 496, 498 (La 1997) (father did not bring suit for disavowal of paternity within required time period and made no claim of inability to bring suit, so "disavowal is now barred by prescription and the presumption of paternity is irrebuttable").

Simons acknowledges that he never initiated a legal action in Louisiana to disavow paternity. But Simons argues that the Louisiana dissolution judgment has that practical effect, because the judgment,

> "which was prepared by [Simons's] attorney and signed by mother, indicates that the marriage produced two children, and it named them. The child presently at issue was not mentioned. By [Simons's] thinking, that judgment effected a disavowal."

As Simons acknowledges, however, the Louisiana dissolution judgment made no mention of J. The parties did not participate in a hearing concerning the dissolution judgment. There is no indication from the dissolution judgment that Simons sought to disavow paternity of J in the context of the dissolution proceeding, and there is no judgment to that effect. Counsel has not provided us with any authority

---

[13] Louisiana Civil Code article 189 was amended effective June 29, 2005, Acts 2005, No. 192, § 1, and subsection (A) now provides, in part, "The action for disavowal of paternity is subject to a liberative prescription of one year. This prescription commences to run from the day the husband learns or should have learned of the birth of the child." The Louisiana Supreme Court explained in *Pociask* that the amendments had the effect of changing the statutory period from "peremptive" to a "liberative prescription." 122 So 3d at 538-39.

that under Louisiana law a dissolution judgment must list all children of the marriage, and we have not found any. But we conclude that, even if there were such a requirement, the fact that a dissolution judgment makes no mention of a child does not foreclose the possibility of an undisclosed child subject to the presumption of paternity.

As noted, Louisiana considers the presumption of legitimacy of a child born during marriage to be one of the strongest in the law and one that is not easily disavowed:

> "To contest the presumption of legitimacy of children born during marriage, the husband must timely institute his personal action to disavow paternity. No one except the husband can file an action to disavow and no fact, rebutting the presumption of legitimacy of children born during marriage, can be considered unless an action to disavow has been timely filed."

*Phillips*, 467 So 2d at 135 (citations omitted). The Louisiana Civil Code contemplates that a person who is presumed to be a father may disavow paternity by bringing *a suit* to disavow paternity, *i.e.*, by initiating a "personal action" within the prescriptive period. *Hernandez v. Hernandez*, 763 So 2d 36, 39 (La App 3 Cir 2000). In light of the strict requirements under Louisiana law for disavowal of paternity, we conclude that the mere failure of the Louisiana dissolution judgment to mention J does not serve to disavow J's paternity by father. *Cf. State ex rel Moran v. Rushman*, 177 Or App 290, 33 P3d 999 (2001), *rev den*, 333 Or 260 (2002) (statement in dissolution judgment that there are "no children born of issue of [the parties'] marriage" would be binding on parties to dissolution judgment but does not bind state in proceeding to establish paternity for purposes of child support).

As noted, if the parties were living separately for 300 days immediately preceding the child's birth, Louisiana Civil Code article 189(B) allows a putative father to bring a suit to disavow paternity "within one year from the date the husband is notified in writing that a party in interest has asserted that the husband is the father of the child." Simons acknowledges that he has never brought a suit in Louisiana to disavow paternity, but he contends that, if the Louisiana dissolution judgment does not serve as a

disavowal of paternity, he is entitled to disavow paternity in this proceeding, having received notice of mother's intention to hold him legally responsible for the child's support only in this proceeding, in May 2012.

We note that the record is conflicting and that the trial court did not make a finding on the factual issue of when the parties separated. Simons testified that he and mother separated before mother became pregnant with J. Mother testified that she was five months pregnant with J when Simons moved out. Assuming, without deciding, that the facts of this case would support application of the extended statutory period under Louisiana Civil Code article 189(B), we conclude that, in light of Louisiana's strict construction of its presumption of paternity, as well as its strict application of the procedures for disavowing paternity, Simons's contention in this proceeding that he is not the child's biological father would not constitute a "suit for disavowal of paternity" under Louisiana law. Thus, under Louisiana law, Simons's right to disavow paternity or to challenge the presumption is barred, and he is considered to be J's legal father. *Rousseve v. Jones*, 704 So 2d 229, 231-32 (La 1997) (noting presumption in Louisiana Civil Code that husband of mother is presumed to be father of all children born during marriage and that this presumption "has been regarded as the strongest presumption in the law"). We conclude, for that reason, that Simons's paternity has been previously determined by operation of Louisiana law and that he may not raise nonparentage as a defense in this proceeding. We therefore do not consider Simons's contention that the presumption of paternity has been rebutted under Oregon law.

In his second assignment, Simons contends that the court erred in ordering that child support extends potentially until the child is 21 years old. Simons cites a Louisiana statute that requires that support end when a child completes high school. Simons's contention that Louisiana law applies to the determination of the duration of support is based on the assumption, which we have already rejected, that the dissolution judgment is a support order under UIFSA that may not be modified in a manner beyond the authority of a Louisiana court. ORS 110.432(3) ("A tribunal of this state

may not modify any aspect of a child support order that may not be modified under the law of the issuing state."). But, as we have held, the dissolution judgment is not a support order under UIFSA. There is no contention that the trial court's award is incorrect under Oregon law. *See* ORS 110.348(2) (a responding tribunal "[s]hall determine the duty of support and the amount payable in accordance with the law and support guidelines of this state").

Affirmed.