SHORR, J.
*148 Father appeals a judgment granting custody of children and awarding child support to mother. We address three of father's assignments of error.[1] In his first assignment of error, father argues that the trial court erred when it determined that he had waived his objection to the court's personal jurisdiction. We conclude that father did not waive his objection to personal jurisdiction but the court had jurisdiction over father on other grounds, and we affirm the court's jurisdictional determination on that alternative basis. In his third assignment of error, father argues that the trial court erred when it determined his child support obligation based on a calculation of mother's income that excluded monetary gifts from her family. We conclude that the court erred in that respect. In his seventh assignment of error, father argues that the court erred when it made his parenting time conditional on the children's agreement. We conclude that the court erred in that respect as well. Accordingly, we reverse and remand for the trial court to recalculate father's child support obligation and amend its parenting plan. As a result of that reversal, we also reverse the trial court's denial of attorney fees to father. Otherwise, we affirm.
I. FACTS AND PROCEDURAL HISTORY
The pertinent facts are undisputed. Father and mother are both citizens of Saudi Arabia. They were married there, had children there, and eventually moved with their children to Oregon under student visas to pursue post-graduate degrees. Later, father repudiated the marriage under Islamic law and obtained a divorce certificate from a local Islamic center. Eventually, father's visa expired and he moved back to Saudi Arabia, while mother remained in Oregon with the couple's minor children. Father has not returned to the United States since that time and has resided in Saudi Arabia and the United Arab Emirates.
Several years after father returned to Saudi Arabia, mother filed a petition for dissolution of marriage in Oregon *149 in which she sought custody of the children and child support. Father's first filed response to mother's petition was captioned "Response to Petition for Dissolution of Marriage" and "Special Appearance." In that response, father objected that the trial court lacked personal jurisdiction over him because he had insufficient contacts with Oregon. In addition, father objected that the court lacked subject matter jurisdiction over mother's dissolution petition because the couple was already divorced. Finally, father responded to various allegations in mother's petition and requested an award of attorney fees and costs, all "without waiving [father's] affirmative defenses * * * [including] jurisdictional objections."
Father subsequently moved to dismiss mother's petition based on his contention that the trial court lacked personal jurisdiction over him. The court determined that father's initial response constituted a "general appearance" that "called upon the power of [the] court." As such, the court held that father had "waived his opportunity to object to personal jurisdiction." The court then found that it had personal jurisdiction over *777 father based on that waiver and went on to grant various aspects of mother's petition.
Following trial, the court granted custody to mother, allowed father to contact or visit with the children in Oregon subject to their agreement, and imposed on father a monthly child support obligation of $1,412.
II. ANALYSIS
A. Personal Jurisdiction
In his first assignment of error, father contends that the trial court erred when it concluded that he had waived his objection to personal jurisdiction. Father argues that "the end result-a judgment that created a personal obligation (child support)-must be reversed." While we determine that father did not waive his objection to the court's personal jurisdiction, we nevertheless conclude that the court had personal jurisdiction over father for the purpose of entering the support order.
*150 1. Father did not waive his objection to personal jurisdiction .
Father argues that he did not waive his objection to the trial court's personal jurisdiction over him because he responded "specifically to object to jurisdiction," which was included in his first responsive pleading, and both his response to allegations in mother's petition and his request for fees and costs were made "without waiving his jurisdictional defenses."
Objections based on personal jurisdiction are governed by ORCP 21. Although father's response in this case raised additional defenses, responded to allegations, and sought fees and costs, ORCP 21 A provides that "[n]o defense or objection is waived by being joined with one or more other defenses or objections in a responsive pleading or motion." Similarly, ORCP 21 G(1) provides that, when, as here, a responsive pleading is filed, a defense of lack of personal jurisdiction is not waived if it is "included" in the responsive pleading, without expressly limiting the other claims, defenses, or responses that may also be included in that same pleading. See Adams and Adams , 173 Or. App. 242, 251, 21 P.3d 171 (2001) ("In essence, ORCP 21 G(1) operates as a 'raise it or waive it' requirement [for defenses based on personal jurisdiction].").
Our prior opinions and ORCP 21 broadly permit parties to object to personal jurisdiction in an initial responsive pleading without first making a special appearance solely to challenge jurisdiction. See Dept. of Human Services v. M. C.-C. , 275 Or. App. 121, 124 n. 1, 365 P.3d 533 (2015), rev. den. , 358 Or. 611, 369 P.3d 386 (2016) ("As a result of the adoption of the ORCPs, a party * * * need not enter a special appearance in order to raise issues regarding personal jurisdiction * * * but must still raise such issues at the earliest possible time."). Compare Pacific Protective Wear Distributing Co., Inc. v. Banks , 80 Or. App. 101, 105, 720 P.2d 1320 (1986) ("[A] defendant may now attack personal jurisdiction before trial as part of a general appearance." (Citing ORCP 21 G(1).) ), with O'Connor and Lerner , 70 Or. App. 658, 661-62, 690 P.2d 1095 (1984) ("Before moving to dismiss wife's motion for lack of personal jurisdiction, husband moved separately to dissolve *151 a temporary restraining order and for a writ of assistance. * * * [A]fter invoking the power of the court, * * * husband may not contend he has not submitted to the personal jurisdiction of the court."). In this case, father challenged the trial court's exercise of personal jurisdiction at the first opportunity. Father did not respond to mother's petition for dissolution of marriage or otherwise appear before the court in that matter before objecting, in his first responsive pleading, to the court's exercise of personal jurisdiction. Accordingly, father did not waive his objection to the court's jurisdiction over him by raising it along with other responses and requests, as permitted by ORCP 21 A and G, at the "earliest possible time" in his first responsive pleading.
2. The trial court had personal jurisdiction over father.
A valid judgment imposing a personal obligation on a defendant may be entered only by a court having personal jurisdiction over the defendant. World-Wide Volkswagen Corp. v. Woodson , 444 U.S. 286, 291, 100 S.Ct. 559, 62 L.Ed. 2d 490 (1980). Effective personal jurisdiction is subject to *778 both statutory and constitutional requirements. First, a long-arm statute must, under the circumstances presented, confer jurisdiction; second, the court's assertion of jurisdiction must not offend the defendant's due process rights guaranteed by the Fourteenth Amendment to the United States Constitution. State ex rel. Sweere v. Crookham , 289 Or. 3, 6, 609 P.2d 361 (1980).
Although the trial court here erred by concluding that father had waived his objection to the court's personal jurisdiction over him, we nevertheless conclude on the merits that the court had personal jurisdiction over father to establish a child support order.[2]
*152 a. Oregon's long-arm statutes confer personal jurisdiction over father.
Under ORCP 4 L, Oregon's primary long-arm statute, jurisdiction exists "in any action where prosecution of the action against a defendant in this state is not inconsistent with the Constitution of this state or the Constitution of the United States."[3] As we will discuss, personal jurisdiction over father in this case is consistent with constitutional standards. Accordingly, ORCP 4 L provided the trial court with long-arm jurisdiction over father for the purpose of resolving his obligations arising from mother's petition for dissolution of marriage.
Because father lives outside of Oregon, his child support obligations in this case are governed by Oregon's Uniform Interstate Family Support Act (UIFSA), a long-arm statute which establishes, in relevant part,
"(1) In a proceeding to establish or enforce a support order * * *, a tribunal of this state may exercise personal jurisdiction over a nonresident * * * if:
"* * * * *
"(c) The individual resided with the child in this state; [or]
"* * * * *
*153 "(e) The child resides in this state as a result of the acts or directives of the individual[.]"
ORS 110.518 ; see also ORS 110.510(1) ("A tribunal of this state shall apply [Oregon's UIFSA] to a support proceeding involving * * * [a]n obligee, obligor, or child residing in a foreign country."); State ex rel. Simons v. Simons , 265 Or. App. 557, 559, 336 P.3d 557 (2014) ("When, as here, the parties reside in different states, a proceeding for the establishment or enforcement of a child support obligation is also subject to [UIFSA].").
*779 Here, the record demonstrates, and the parties do not dispute, that father and mother resided in Oregon with the children for several years before father returned, on his own accord, to Saudi Arabia. Further, the children resided in Oregon solely because father and mother moved here with the children-that is, the children reside here as a result of father's and mother's "acts or directives." Accordingly, the trial court in this case had statutory authority to assert jurisdiction over father for the purpose of establishing a child support order based on ORS 110.518(1)(c) -because father resided here with the children-and ORS 110.518 (1)(e) -because the children lived here due to father's acts and directives.
b. Personal jurisdiction over father is consistent with due process.
Having determined that the trial court had authority to exercise personal jurisdiction over father under ORCP 4 L and ORS 110.518(1)(c) and (e), we turn to whether such jurisdiction comported with the guarantees of due process. A court may exercise personal jurisdiction over a nonresident consistent with constitutional due process guarantees only if the nonresident has purposefully established sufficient "minimum contacts" with the forum state "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." International Shoe Co. v. State of Washington , Office of Unemployment Compensation and Placement , 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945).
*154 Based on federal case law construing the due process requirements for personal jurisdiction, the Oregon Supreme Court has explained that "the inquiry as to whether specific jurisdiction exists has three aspects":
"First, the defendant must have purposefully directed its activities at this state. Second, the litigation must 'arise out of or relate to' at least one of those activities. That particular activity must be a but-for cause of the litigation and provide a basis for an objective determination that the litigation was reasonably foreseeable. Finally, the exercise of jurisdiction must otherwise comport with fair play and substantial justice."
Robinson v. Harley-Davidson Motor Company , 354 Or. 572, 594, 316 P.3d 287 (2013) (internal citations omitted).
Applying the foregoing analysis to this case, we conclude that the trial court had personal jurisdiction over father for the purpose of adjudicating this case because father had sufficient minimum contacts with Oregon and because jurisdiction under the facts of this case comports with "traditional notions of fair play and substantial justice." Id .
A person has sufficient minimum contacts with a forum where his or her "conduct and connection with the forum State are such that he [or she] should reasonably anticipate being haled into court there." World-Wide Volkswagen Corp ., 444 U.S. at 297, 100 S.Ct. 559. The inquiry into "whether a forum state may assert specific jurisdiction over a nonresident defendant 'focuses on the relationship among the defendant, the forum, and the litigation.' " Walden v. Fiore , 571 U.S. 277, 281, 134 S.Ct. 1115, 188 L.Ed. 2d 12 (2014) (quoting Keeton v. Hustler Magazine, Inc. , 465 U.S. 770, 775, 104 S.Ct. 1473, 79 L.Ed. 2d 790 (1984) ). In this case, there is a connection between father, Oregon, and this litigation, such that we can conclude that father had sufficient minimum contacts with Oregon for the purpose of this suit.
First, father purposefully and substantially directed his activities at Oregon. Father and mother chose to move to Oregon with their children and establish a life here. The couple raised their children here, and lived, studied, and worked here. Father's life was centered in Oregon for many *155 years before he returned to Saudi Arabia. Those are precisely the kinds of purposeful contacts that support jurisdiction over father by the Oregon courts. Compare Adams , 173 Or. App. at 247-48, 21 P.3d 171 (relevant contacts by the nonresident husband for determining personal jurisdiction included fact that the husband and the wife moved to Oregon and raised a family here, among other connections), with Kulko v. Superior Court of California , 436 U.S. 84, 97-98, 98 S.Ct. 1690, 56 L.Ed. 2d 132 (1978) (jurisdiction by California court over the father-a New York resident-for child support determination unreasonable where the father "acquiesced" to the mother and child *780 moving to California and communicated with the wife and child there but otherwise had no meaningful contacts with California).
Second, this case arises directly out of father's contacts with Oregon. Father unilaterally left Oregon, while mother and children remained in Oregon, and mother petitioned for divorce here. Mother's petition arises directly out of the couple's marital and familial relationship as it existed in Oregon. Indeed, that relationship establishes a clear but-for link between father's contacts with Oregon and the current litigation, as the litigation only arose here because the marital and familial relationship was so firmly established here. What is more, the nature and extent of father's contacts with Oregon lead to an objective determination that father reasonably should have anticipated that any litigation arising from his marital or familial relationship would arise here.
Father relies on Horn and Horn , 97 Or. App. 177, 775 P.2d 338, rev. den. , 308 Or. 465, 781 P.2d 1214 (1989), to support his argument that he had insufficient minimum contacts with Oregon to support jurisdiction over him. In Horn , the family lived in Oregon before moving to California, after which they ceased to have any meaningful contacts with Oregon. After several years of living in California, the marriage broke up and the mother and children moved back to Oregon, while the father remained in California. The mother initiated dissolution proceedings in Oregon in which she sought determinations related to custody, child support, and division of personal property. At that time, father had communicated with the family in Oregon but otherwise had no meaningful *156 connections with the state. We concluded that father's contacts with Oregon were "insufficient to establish jurisdiction." Id . at 180, 775 P.2d 338.
Father argues that Horn is "essentially identical" to this case and compels the same outcome here. But Horn is distinguishable. In that case, the family severed ties with Oregon and moved to California. At that point, there was no reason for either parent to expect that Oregon courts retained jurisdiction over potential marital disputes simply by virtue of the fact that the family had once resided there. The mother's unilateral decision to then return to Oregon after her separation from the father likely reestablished jurisdiction in Oregon over her, but her choice did not reestablish contacts with Oregon on the father's behalf.
In the present case, by contrast, father chose to leave Oregon on his own accord while the rest of the family remained behind. We acknowledge that father has had few, if any, meaningful contacts with Oregon since that time. But that does not diminish his long history of significant and meaningful contacts with the state while he lived here with his family, which includes raising his children here immediately prior to leaving.
We have never directly addressed, in determining whether Oregon courts have jurisdiction over a nonresident parent, whether that parent's unilateral decision to leave the state supports the conclusion that that parent lacks minimum contacts with Oregon going forward. But other states have addressed that issue and concluded that the contacts formed with the state while the family lived there were sufficient to satisfy due process guarantees even if the nonresident party had effectively severed all ties with the state. For example, in Panganiban and Panganiban , 54 Conn. App. 634, 736 A.2d 190, cert. den. , 251 Conn. 920, 742 A.2d 359 (1999), a Connecticut case, the appellate court found that the trial court had jurisdiction to impose support on a nonresident spouse who had unilaterally left the state. The Connecticut court determined that the
"defendant's contacts with Connecticut prior to leaving were substantial and certainly give rise to specific jurisdiction. The financial orders arise out of the dissolution *157 of a marriage that was entered into in this state, and Connecticut is the place where the defendant conducted the daily activities of his marital life[.] * * * Therefore, the trial court properly concluded that the defendant had sufficient contact with Connecticut to justify the exercise of personal jurisdiction over him.
"* * * [I]t is unquestionably reasonable for this state to hale the defendant into court with respect to financial obligations related to his marriage. To hold otherwise would mean that once a married person left the state, no Connecticut court could *781 exercise in personam jurisdiction over that person in a dissolution action brought by the spouse left behind if the departing spouse had no contact with Connecticut between the time of departure and the time that the dissolution action was brought. Such a bizarre result is not warranted under the circumstances of this case."
Id. at 640-42, 736 A.2d 190.
In a similar case out of North Dakota, Catlin and Catlin , 494 N.W.2d 581 (N.D. 1992), the state supreme court determined that the trial court had personal jurisdiction over a nonresident spouse based on sufficient minimum contacts with the state during the marriage. The court affirmed the trial court's jurisdictional determination, concluding that
"[husband] had established significant contacts with North Dakota while living here which satisfied due process requirements, and that those contacts were directly related to the action for divorce and child custody. * * * He was married here, fathered a child there, and spent the first years of his son's life here. North Dakota was the last state in which the family lived before [husband's] temporary [military] assignment in Turkey, and [wife] returned to live in North Dakota after leaving Turkey.
"* * * * *
"We also see no relevance in the fact that [husband] voluntarily terminated his contacts with the state. The result of such an argument would be that defendants could render themselves immune from suit in the state by merely packing up and leaving. It is hard to imagine the chaos which would ensure in domestic relations law if one party could *158 defeat jurisdiction merely by exiting the state before the summons is served."
Id. at 590.
We similarly conclude that father established significant, purposeful, and continuing contacts with Oregon when he lived here with mother and their children. Those contacts make it reasonable to hale father into court here to determine his financial obligations arising out of mother's petition for dissolution of marriage. Father cannot avoid the jurisdiction of our courts in this matter simply by voluntarily terminating his contacts with the state.
Third, we conclude that the exercise of personal jurisdiction over father under the facts of this case comports with "traditional notions of fair play and substantial justice." That issue turns on a number of factors, including the burden on the defendant of litigating in a foreign jurisdiction; the plaintiff's interest in obtaining convenient and effective relief; the interest of the forum state in adjudicating disputes and vindicating the rights of its citizens; the interstate judicial system's interest in the efficient resolution of controversies; and the shared interest of the several states in furthering fundamental social policies. World-Wide Volkswagen Corp. , 444 U.S. at 292, 100 S.Ct. 559. The foregoing analysis is "not susceptible of mechanical application; rather, the facts of each case must be weighed to determine whether the requisite 'affiliating circumstances' are present." Kulko , 436 U.S. at 92, 98 S.Ct. 1690 (quoting Hanson v. Denckla , 357 U.S. 235, 246, 78 S.Ct. 1228, 2 L.Ed. 2d 1283 (1958) ).
Turning to this case, we first acknowledge that litigating this action in Oregon is likely inconvenient and burdensome for father, who lives abroad. See Adams , 173 Or. App. at 249, 21 P.3d 171 (acknowledging that the nonresident husband faced burdens by litigating in Oregon, including "increased costs, time, and inconvenience" compared to litigating where he resided). But, not only does mother face the same burden if child support matters are litigated elsewhere, father's burden is outweighed by the other interests at stake. Mother and the children have a compelling interest in obtaining convenient relief in Oregon where they reside. And Oregon has a strong interest in establishing and enforcing child support *159 actions on behalf of children who reside here. See Kulko , 436 U.S. at 100, 98 S.Ct. 1690 (explaining that states have "substantial interests in protecting resident children and in facilitating child-support actions on behalf of those children"); Adams , 173 Or. App. at 249, 21 P.3d 171 (determining in a child support case in which the mother and children live in Oregon and the father lives in California that "Oregon's interest in providing a forum is substantial"). Indeed, all states share a collective interest in ensuring that parents provide for and support their minor children, and that common policy concern *782 is furthered when a court's jurisdictional reach extends to nonresident parents who unilaterally leave the state where the family resides. Accordingly, although father in this case has had limited contacts with Oregon since moving out of the state and has an interest in litigating elsewhere, other factors demonstrate the ultimate reasonableness and fairness of resolving child support issues here.
In sum, we conclude that the trial court had jurisdiction over father for the purpose of establishing a child support order. The court had statutory long-arm authority under ORCP 4 L and ORS 110.518(1)(c) and (e), and jurisdiction under these circumstances was consistent with the requirements of due process. Although the court erroneously concluded that it had jurisdiction over father based on waiver, we affirm on the foregoing alternative basis.
B. Child Support
As part of his third assignment of error, father argues that the trial court erred when it calculated his child support obligations. Specifically, father assigns error to the court's failure to consider mother's periodic gift income from her family when calculating child support.
When a trial court calculates a parent's child support obligations, it must rely on a number of factors, including both parents' income. ORS 25.275(1) ; Carleton and Carleton , 275 Or. App. 860, 866, 366 P.3d 365 (2015) ("To calculate the child support amount, the trial court must determine each parent's income as provided by OAR 137-050-0715."). "Income" is a defined term meaning the "actual or potential gross income of a parent." OAR 137-050-0715(1).
*160 "Actual income" includes, among other things, "gifts." OAR 137-050-0715(4)(e).
Here, it is undisputed that mother received periodic cash gifts from her family. Mother testified that, "every few month[s]," she received between $10,000 and $20,000 from her family and that she had used a gift of $167,000 from her family as a partial payment for her home. It is unclear from the record the sum total of those gifts, when those gifts began, and if or when they ceased. Mother testified that she received her last gift approximately five months before the trial. When the trial court calculated mother's income for the purpose of determining father's child support obligations, it failed to determine the total amount of mother's gift income and did not factor that income into its calculations.
The trial court did consider whether mother's gift income should apply as a rebuttal factor supporting a downward deviation in father's support obligation but ultimately decided that those gifts "should not be applied as rebuttal factors." See ORS 25.280 (stating that the presumption that a child support obligation determined by statutory formula is correct may be rebutted by a finding that "the application of the formula would be unjust or inappropriate in a particular case"). Although that ruling indicates that the court considered mother's gift income to some extent when setting child support, father objected specifically to the court's failure to include the gifts as an element of mother's total gross income when the court initially calculated father's presumptive support obligation.
We conclude that the trial court should have considered mother's gift income as an element of mother's gross income when calculating father's child support obligation. Mother periodically received large cash gifts from her family on at least a semiregular basis. Gifts of that nature are a component of mother's gross income, which bears directly on father's child support obligation. Cf. Leif and Leif , 246 Or. App. 511, 516, 519, 266 P.3d 165 (2011) (determining that the father's cash inheritance was a gift and the trial court "properly included the inheritance when calculating father's gross income to determine his presumptive child support obligation"). Accordingly, we reverse and remand the judgment *161 awarding child support to mother for the court to recalculate father's child support obligation taking into account all of mother's income as defined by OAR 137-050-0715.[4] *783 C. Parenting Time
In his seventh assignment of error, father argues that the trial court erred when it allowed the children to decide whether father could have contact or visit with them. Father argues that the court's order makes his parenting time conditional on the children's agreement, which is impermissible under Oregon law.
A trial court's decision on parenting time is a matter of discretion that we review accordingly. Murray and Murray , 287 Or. App. 809, 814, 403 P.3d 473 (2017). A court abuses its discretion if its ruling does not "lie within the range of legally permissible outcomes." Olson and Olson , 218 Or. App. 1, 16, 178 P.3d 272 (2008). Here, the trial court allowed father parenting time, including "telephone and/or Skype contact with the children" and "in-person visits with the children when he is in Oregon" subject to "the children's agreement" or "as agreed by the children." That is, the court made father's parenting time conditional on whether and when the children wanted to see or speak to him.
We have previously established that a noncustodial parent's parenting time cannot be left up to the custodial parent. In Stewart and Stewart , 256 Or. App. 694, 695-96, 302 P.3d 818 (2013), we concluded that the trial court erred when it "let husband make the decision" regarding the wife's parenting time. We explained that it is "the court's task, not husband's, to develop a parenting plan, including appropriate quality parenting time, in the best interest of the children." Id. at 696, 302 P.3d 818.
Based on Stewart , it would have been impermissible for the trial court in this case to make father's parenting time conditional on mother's agreement. There is *162 no substantive difference between that and what the court actually did, which was to make father's parenting time conditional on the children's agreement. The children's ability to effectively deny father's parenting time under the current order is especially problematic in this case, where mother has sole custody of the children and father lives in a different country with limited ability to communicate with the children. We conclude, therefore, that the court's order making the children's agreement a precondition to father's parenting time was not within the range of legally permissible outcomes. Accordingly, we reverse and remand for the trial court to develop a parenting plan that does not make father's parenting time contingent upon the children's agreement.
D. Attorney Fees
Finally, because we must reverse and remand the trial court's judgment as discussed above, we also reverse the trial court's supplemental judgment denying father an award of attorney fees, which was based on that judgment.
Portion of general judgment awarding child support to mother and setting parenting time reversed and remanded; otherwise affirmed. Supplemental judgment denying attorney fees to father reversed.

We reject father's second, fourth, fifth, and sixth assignments of error without written discussion.

Under Outdoor Media Dimensions, Inc. v. State of Oregon , 331 Or. 634, 659-60, 20 P.3d 180 (2001), we may, as a matter of discretion, "affirm the ruling court on an alternative basis when certain conditions are met." Here, each of the conditions is met. First, whether the trial court had jurisdiction over father is purely a question of law, and there is evidence in the record to support the alternative basis for affirmance. See Adams , 173 Or. App. at 245, 21 P.3d 171 ("Jurisdiction is a question of law that we review accordingly."). Relatedly, father could not have created a different record in the trial court that could affect our analysis as we conclude that the trial court had jurisdiction on the facts father presented. Second, as we discuss at 292 Or. App. at 158-59, 424 P.3d at 781-82, the trial court did, in fact, have personal jurisdiction over father for the purpose of establishing a child support order. Third, the court's basis for asserting jurisdiction over father was both erroneous-in that it was based on a legally incorrect determination that father had waived his challenge to jurisdiction-and "unnecessary in light of the alternative basis for affirmance"-in that the court had personal jurisdiction over father whether or not he waived his jurisdictional challenge.

ORCP 4 K provides long-arm jurisdiction in "certain marital and domestic actions." Under that subsection, jurisdiction exists
"[i]n any action to enforce personal obligations arising under ORS chapter 106 or 107, if the parties to a marriage have concurrently maintained the same or separate residences or domiciles within this state for a period of six months, notwithstanding departure from this state and acquisition of a residence or domicile in another state or country before filing of such action; but if an action to enforce personal obligations arising under ORS chapter 106 or 107 is not commenced within one year following the date upon which the party who left the state acquired a residence or domicile in another state or country, no jurisdiction is conferred by this subsection in any such action."
ORCP 4 K(2). The Oregon courts would not have jurisdiction over father under that subsection because father left Oregon and established both residence and domicile in another country more than one year before mother petitioned to dissolve the marriage in Oregon.

As part of his third assignment of error, father argues that the trial court erred in denying him discovery regarding mother's gift income and in denying father's motion for a continuance of the trial to seek such discovery. Because this case is being remanded to address the gift-income issue, we need not resolve those issues here.